PEOPLE v WATSON

Docket No. 218218. Submitted November 15, 2000, at Detroit. Decided
May 4, 2001, at 9:05 A.M. Leave to appeal sought.

David L. Watson was convicted by a jury in the St. Clair Circuit Court,
James P. Adair, J., of three counts of first-degree criminal sexual
conduct, one count of assault with intent to commit second-degree
criminal sexual conduct, one count of possession of a firearm dur-
ing the commission of a felony, and one count of assault and bat-
tery. The convictions arose out of abusive incidents that occurred
in March 1997, June 1998, and September 1998. The defendant was
sentenced as a second-offense habitual offender to concurrent
prison sentences of life for one of the convictions of first-degree
criminal sexual conduct and twenty to eighty years for each of the
other two convictions of first-degree criminal sexual conduct, three
to five years for the conviction of assault with intent to commit
second-degree criminal sexual conduct, and ninety days for the
conviction of assault and battery. He was also sentenced to a con-
secutive two-year term of imprisonment for the felony-firearm con-
viction. The defendant appealed.

The Court of Appeals *held*:

1. The court did not err in admitting into evidence a photograph
of the naked buttocks of the sexual abuse victim and an enlarge-
ment of the photograph. The evidence was admissible to show the
defendant's motive. The photograph, which the defendant carried
in his wallet, was relevant to show the defendant's inducement for
having sexual relations with the victim, his stepdaughter, and
tended to prove that the alleged sexual assaults actually took place.
The probative value of the evidence was not substantially out-
weighed by the danger of unfair prejudice. The increased size of
the enlargement, which showed the entire original photograph from
which the photograph in the defendant's wallet had been cropped,
did not present any greater danger of unfair prejudice than a stan-
dard-size print would have presented.

2. The court did not abuse its discretion in finding the sexual
assault victim's seven-year-old brother competent to testify. The
prosecution's use of leading questions in eliciting testimony from
this witness did not deny the defendant the ability to cross-

examine the witness. There is no merit to the defendant's claim that the witness' testimony was more prejudicial than probative.

3. The prosecutor's arguments properly included reasonable inferences from the evidence.

4. The defendant was not prejudiced, and reversal is not required, as a result of the prosecutor's alleged appeal to the jury's sympathy for the victim.

5. The prosecutor's comments that suggested that defense counsel was trying to distract the jury from the truth were made in response to defense counsel's arguments and do not require reversal.

6. The complaint and the warrant alleged with regard to the March 1997 incident that the defendant committed first-degree criminal sexual conduct and that his first-degree criminal sexual conduct was the predicate offense for the felony-firearm offense. The information, however, charged the defendant with regard to the March 1997 incident with assault with intent to commit second-degree criminal sexual conduct and a felony-firearm offense based on a predicate offense of first-degree criminal sexual conduct. The evidence clearly indicated that during the March 1997 incident, the defendant possessed a firearm while committing assault with intent to commit second-degree criminal sexual conduct, but not while committing first-degree criminal sexual conduct. The defendant's felony-firearm conviction therefore was not supported by sufficient evidence and the felony-firearm conviction and sentence must be reversed. The prosecution may not retry the defendant on that identical felony-firearm charge. However, because the prosecution listed the wrong statute as the predicate offense for the felony-firearm charge and there was sufficient evidence to convict the defendant of a felony-firearm offense using the predicate offense of assault with intent to commit second-degree criminal sexual conduct, the matter must be remanded for a retrial of the felony-firearm charge using the correct predicate offense. The remaining convictions and sentences must be affirmed.

Affirmed in part, reversed in part, and remanded.

1. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a permissible purpose, i.e., to show something other than the defendant's propensity to commit the charged crime, it is relevant to an issue of fact of consequence at trial, and its probative value is not substantially outweighed by the danger of unfair prejudice; upon request, a trial court may provide an instruction to the jury regarding the limited use of the evidence.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — DEFECTS IN CHARGING INSTRU-
   MENTS — INSUFFICIENT EVIDENCE.

   A defendant whose conviction is not supported by sufficient evidence
   may not be retried on the identical charge; the Double Jeopardy
   Clause prohibits a retrial on a charge for which a reviewing court
   concludes that the associated conviction was not supported by
   legally sufficient evidence; however, where the reversal of a defen-
   dant's conviction is the result of a defect in the charging instru-
   ment, i.e., where the state convicts the defendant under a statute
   that does not encompass the defendant's otherwise criminal con-
   duct, the Double Jeopardy Clause does not prohibit a retrial under
   the correct statute that makes such conduct criminal where there
   is sufficient evidence to convict under that statute (US Const,
   Am V).

*Jennifer M. Granholm*, Attorney General, *Thomas
L. Casey*, Solicitor General, *Peter R. George*, Pros-
ecuting Attorney, and *Timothy K. Morris*, Assistant
Prosecuting Attorney, for the people.

State Appellate Defender (by *Gary L. Rogers*), for
the defendant on appeal.

Before: CAVANAGH, P.J., and TALBOT and METER, JJ.

METER, J. Defendant appeals as of right from his
convictions by a jury of three counts of first-degree
criminal sexual conduct (CSC I), MCL 750.520b(1), one
count of assault with intent to commit second-degree
criminal sexual conduct (CSC II), MCL 750.520g(2), one
count of possession of a firearm during the commis-
sion of a felony (felony-firearm), MCL 750.227b(1),
and one count of assault and battery, MCL 750.81.
The court sentenced defendant as a second-offense
habitual offender, MCL 769.10(1), to concurrent terms
of imprisonment as follows: life for one CSC I convic-
tion, twenty to eighty years each for the other two CSC
I convictions, three to five years for the assault with
intent to commit CSC II conviction, and ninety days for

the assault and battery conviction. The court also sentenced defendant to the mandatory, consecutive two-year term of imprisonment for the felony-firearm conviction. We reverse and remand with respect to defendant's conviction and sentence for the felony-firearm charge but affirm the remaining convictions and sentences.

Defendant's convictions arose out of three instances of abuse of his stepdaughter that occurred while she was eleven, twelve, and thirteen years old. The abusive incidents occurred in March 1997, June 1998, and September 1998. The assault with intent to commit CSC II conviction and the felony-firearm conviction related to the March 1997 incident. One of the CSC I convictions related to the June 1998 incident. The remaining two CSC I convictions, as well as the assault and battery conviction,[1] related to the September 1998 incident.

I

Defendant first argues that the trial court erred in admitting into evidence a photograph and an enlargement purportedly showing the victim's naked buttocks. We review a trial court's evidentiary rulings for an abuse of discretion. *People v Brownridge*, 459 Mich 456, 460; 591 NW2d 26 (1999), amended 459 Mich 1276 (1999). An abuse of discretion exists if an unprejudiced person would find no justification for the ruling made. *People v Rice (On Remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999).

---

[1] Defendant committed the assault and battery against the sister of the sexual abuse victim. The term "victim" in this opinion refers to the sexual abuse victim.

Generally, all relevant evidence is admissible. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, evidence of a person's character is not admissible to show that the person acted in conformity with that character on a particular occasion. MRE 404(a). Likewise, "evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998); MRE 404(b)(1).

The rationale behind this rule "is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *Crawford, supra* at 384. However, MRE 404(b) does not preclude the use of other acts evidence for other relevant purposes. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Rather, MRE 404(b) "permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct." *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). Thus, "the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Crawford, supra* at 390 (emphasis in original). Some permissible uses of other acts evidence are "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." See MRE

404(b)(1). This list, however, is not exhaustive. *Sabin, supra* at 56; *Starr, supra* at 496.

In *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), the Supreme Court adopted an approach to other acts evidence articulated in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988), that employs the evidentiary safeguards already present in the rules of evidence. First, the prosecutor must offer the other acts evidence for a permissible purpose, i.e., to show something other than the defendant's propensity to commit the charged crime. *VanderVliet, supra* at 74. Second, the evidence must be relevant to an issue or fact of consequence at trial. *Id.* Third, the trial court must determine whether the evidence is inadmissible under MRE 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *VanderVliet, supra* at 74-75. Additionally, the trial court, on request, may instruct the jury on the limited use of the evidence. *Id.* at 75.

In the instant case, defendant argues that the photograph of the victim's naked buttocks was inadmissible under MRE 404(b) because it was offered simply to show that defendant was a sexual pervert, which made it more likely that the victim's allegations of sexual abuse were true. Defendant argues that the evidence was not relevant for any permissible, non-propensity purpose and that the prejudicial effect of the evidence substantially outweighed any probative value it did have. The prosecutor argues that the evidence was relevant to show defendant's motive and intent toward the victim. The trial court, without

articulating the basis for its ruling, admitted both the photograph and an eight- by ten-inch enlargement of it.

The trial court did not abuse its discretion in admitting the photograph and the enlargement. The prosecutor offered the evidence to show motive and intent, and we agree that the photograph was admissible to show defendant's motive. In *People v Hoffman*, 225 Mich App 103, 106-107; 570 NW2d 146 (1997), the defendant was charged with assaulting his girlfriend with the intent to murder her, and two of the defendant's former girlfriends testified that the defendant had assaulted them and made statements about his hatred of women. The prosecutor offered the testimony to show that the defendant's assault on the current victim was motivated by his misogyny. This Court held that the other acts evidence was admissible to show the defendant's motive. *Id.* at 109-110.

The Court noted that "[t]he distinction between admissible evidence of motive and inadmissible evidence of character or propensity is often subtle." *Id.* at 107. Evidence of past violent acts of a defendant, alone, would establish only that the defendant was a violent person who was thus more likely to have committed the charged violent crime. The Court reasoned that this would simply be evidence showing a propensity toward violence, which would be inadmissible. *Id.* at 107-108. However, the Court found that the evidence of past violent acts that tended to show that the defendant hates women and had acted on that hatred in the past demonstrated more than the defendant's propensity toward violence—it was relevant to show the defendant's motive for the violent attack on the current victim. *Id.* at 109-110.

Likewise, evidence in the instant case that defendant had a sexual interest specifically in his stepdaughter would show more than simply his sexually deviant character—it would show his motive for sexually assaulting his stepdaughter. Thus, evidence that defendant carried in his wallet a photograph of his stepdaughter's naked buttocks had probative value to show that the victim's allegations were true. Defendant denied sexually assaulting his stepdaughter, but the other acts evidence demonstrated that he had a motive to engage in sexual relations with her. " 'A motive is the inducement for doing some act; it gives birth to a purpose.' " *Sabin, supra* at 67-68, quoting *People v Kuhn*, 232 Mich 310, 312; 205 NW 188 (1925). The photograph was relevant to show defendant's inducement for having sexual relations with his stepdaughter.

This conclusion is not undermined by the Supreme Court's decisions in *Sabin, supra,* and *People v Engelman*, 434 Mich 204; 453 NW2d 656 (1990). In *Sabin, supra* at 47-50, the trial court admitted evidence that the defendant, who was charged with having sexual intercourse with his daughter, had previously performed oral sex on his stepdaughter on several occasions. The Supreme Court held that the trial court did not abuse its discretion in admitting the other acts evidence to show that the defendant employed a common scheme or plan in molesting the girls. *Id.* at 61-67. However, the Court cautioned against admitting evidence simply to show that a defendant has a "lustful disposition." *Id.* at 60-61. The Court held that the evidence that the defendant performed oral sex on his stepdaughter was not admissible to show his motive for having sexual intercourse with his daugh-

ter. *Id.* at 67-68. The prosecutor had argued that the other acts evidence demonstrated the defendant's motive to have sexual relations with young girls who were related to him, which tended to prove that the alleged sexual assault against his daughter actually took place. *Id.* at 68. The Court rejected the prosecutor's argument, holding that "[t]o accept the prosecutor's theory of logical relevance would allow use of the evidence for the prohibited purpose of proving defendant's character to show that he acted in conformity therewith during the events underlying the charged offense." *Id.*

The prosecutor's theory of relevance in the instant case is similar to that in *Sabin*. The photograph showed that defendant had a motive to have sexual relations with his stepdaughter, which tended to prove that the alleged sexual assaults actually took place. However, in the instant case, the other acts evidence involved the specific victim herself, not someone else, as in *Sabin*. Thus, the other acts evidence showed more than defendant's propensity toward sexual deviancy; it showed that he had a specific sexual interest in his stepdaughter, which provided the motive for the alleged sexual assaults. *Sabin* is distinguishable.

Defendant argues that the photograph was inadmissible under *Engelman*, *supra* at 221. In *Engelman*, the defendant was charged with performing fellatio on a fifteen-year-old boy. The trial court admitted into evidence a photograph showing the defendant standing nude with a young girl who was lifting her nightgown to expose herself. *Id.* at 207-211. The Supreme Court held that the trial court abused its discretion in admitting the photograph because the prosecutor

failed to establish a proper purpose for the evidence. *Id.* at 225. The asserted purpose for offering the photograph in *Engelman* was to show the defendant's scheme or plan in molesting young children. *Id.* at 218. The Court rejected this theory of relevance because it did not establish a true plan in committing the acts. *Id.* at 221. However, the Court stated that, under different circumstances, such a photograph could be relevant to show motive, which in turn could be probative evidence that the defendant committed the charged crime. *Id.* at 223. In the instant case, where the photograph was of the victim herself, the evidence was indeed relevant to show defendant's motive and was therefore admissible. This conclusion is reinforced by *People v Scobey*, 153 Mich App 82, 87; 395 NW2d 247 (1986), in which this Court perfunctorily held that the trial court did not abuse its discretion in admitting four nude photographs of the defendant's daughter that the defendant had taken, where the defendant was charged with sexually assaulting his daughter.

Additionally, the probative value of the photograph and the enlargement was not substantially outweighed by the danger of unfair prejudice. "The danger [MRE 403] seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself." *Starr, supra* at 500. Defendant argues that the evidence was inflammatory because it showed that he was a pervert. However, the evidence had strong probative value because it tended to establish defendant's motive for committing the charged offenses, which defendant denied occurred. Although the danger of prejudice

existed, defendant has failed to show that it substantially outweighed the probative value of the evidence.

Defendant's objection to the admission of the enlargement pertains to the increased size of eight inches by ten inches, compared to a standard-size print of four inches by six inches. The enlargement was admitted to show the entire original photograph, because the photograph found in defendant's wallet was a cropped version of that photograph. Defendant agreed that the jury should see the entire photograph, given that the cropped version was admitted. It was reasonable to provide the jury with an eight- by ten-inch enlargement instead of a smaller print. Defendant fails to demonstrate that the increased size of the enlargement presented any greater danger of unfair prejudice than a smaller four- by six-inch print would present. Finally, although the trial court did not instruct the jury on the limited purpose for which the other acts evidence was admitted, defendant did not request such an instruction.

As stated earlier, the trial court did not specify its reasoning for admitting the evidence; however, this Court should nonetheless affirm where the trial court reached the correct result. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998). We find no abuse of discretion.

Even if the trial court *had* abused its discretion in admitting the photograph and the enlargement, any error would have been harmless in light of the overwhelming evidence of defendant's guilt. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (an evidentiary error is not a basis for reversal unless "it is more probable than not that the error was outcome determinative").

II

Next, defendant argues that the trial court erroneously found the victim's seven-year-old brother, AK, competent to testify. We review a trial court's determination of the competency of a witness for an abuse of discretion. *People v Breck*, 230 Mich App 450, 457; 584 NW2d 602 (1998).

All witnesses are presumed to be competent to testify. *People v Coddington*, 188 Mich App 584, 597; 470 NW2d 478 (1991). MRE 601 governs witness competency and provides as follows:

> Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

The test of competency is thus whether the witness has the capacity and sense of obligation to testify truthfully and understandably. *Breck, supra* at 457. Where the trial court examines a child witness and determines that the child is competent to testify, "a later showing of the child's inability to testify truthfully reflects on credibility, not competency." *Coddington, supra* at 597.

Here, the record as a whole demonstrates that AK knew the difference between telling the truth and telling a lie and that he promised to tell the truth. Accordingly, the trial court did not abuse its discretion in holding that AK was competent to testify. Moreover, defense counsel expressly acknowledged that AK knew what telling the truth meant. This constituted a waiver of this issue that would extinguish any error even if the trial court *had* abused its discre-

tion. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Defendant's arguments below and on appeal focus on AK's difficulty in testifying and the prosecutor's use of leading questions. Defendant argues that this effectively denied him the right to cross-examine AK, because the prosecutor was virtually putting words into AK's mouth. However, any difficulty AK displayed in remembering specific events or in testifying audibly relate to his credibility, not his competency. *Coddington, supra* at 597. Indeed, this Court has upheld a trial court's determination of competency where a child witness' testimony displayed confusion and contradiction, or even a reluctance to answer some questions. *Id.*; *People v Jehnsen*, 183 Mich App 305, 307-308; 454 NW2d 250 (1990); *People v Cobb*, 108 Mich App 573, 575-576; 310 NW2d 798 (1981).

Defendant's contention that he was denied his rights of confrontation and cross-examination is without merit. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Frazier (After Remand)*, 446 Mich 539, 543; 521 NW2d 291 (1994) (BRICKLEY, J.). Although a defendant must be given the opportunity for cross-examination, the defendant has no constitutional right to a successful cross-examination. *People v Chavies*, 234 Mich App 274, 283; 593 NW2d 655 (1999). Thus, a defendant's right of confrontation is not denied even if the witness, on cross-examination, claims a lack of memory. *Id.* Here, defense counsel was able to cross-examine AK. For example, defense counsel elicited that AK remem-

bered only "a little" about the events on his own. The prosecutor's use of leading questions did not deny defendant the ability to cross-examine AK.

Moreover, even if defendant's right of confrontation *was* denied, any error was harmless. Constitutional error is not a basis for reversal if the error was harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). The factors to consider include "the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *People v Kelly*, 231 Mich App 627, 645; 588 NW2d 480 (1998). In this case, the substance of AK's testimony, which related to the September 1998 incident, was simply that the victim came into his room and got on a bed and that defendant came into the room and pushed the victim to the floor. AK did not know what happened after that. This testimony was cumulative of the testimony given by the victim and the victim's sister. AK's testimony added very little to the existing evidence involving the September 1998 incident, which was overwhelming. Any violation of defendant's right to confrontation was therefore harmless beyond a reasonable doubt.

Defendant's argument that AK's testimony was more prejudicial than probative is also without merit. MRE 403 allows for relevant evidence to be excluded where the trial court determines that its probative value is substantially outweighed by the danger of unfair prejudice. However, defendant has failed to demonstrate that AK's testimony was prejudicial.

Indeed, as noted above, AK's testimony added little to the prosecutor's case. In any event, any error would be rendered harmless by the other, overwhelming evidence of defendant's guilt.

III

Next, defendant argues that the prosecutor committed misconduct requiring reversal by (1) repeatedly using improper leading questions during the direct examination of witnesses, (2) repeatedly relying on facts in her closing argument that were not in evidence, (3) improperly appealing to the jurors' sympathy for the victim, and (4) falsely accusing defense counsel of intentionally using misleading tactics. We review claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995); *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995). However, a defendant's unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000). In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *Schutte, supra* at 721.

A. THE PROSECUTOR'S ALLEGED USE OF LEADING QUESTIONS

Defendant argues that the prosecutor repeatedly used leading questions in order to elicit desired testi-

mony from witnesses and that the prosecutor's insistence on this tactic in the face of the trial court's admonitions demonstrates a pattern of intentional misconduct requiring reversal. We disagree.

Initially, we note that defendant cites no legal authority to support his claim that the prosecutor's use of leading questions constitutes misconduct requiring reversal. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Kelly*, *supra* at 640-641. Defendant's failure to cite any supporting legal authority constitutes an abandonment of this issue. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Even if defendant had *not* abandoned this issue, we would nonetheless find no basis for reversal. Indeed, a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses. *People v Kosters*, 175 Mich App 748, 756; 438 NW2d 651 (1989). All but one of the questions defendant challenges on appeal were asked of the thirteen-year-old victim. Any leading of the witness was only to the extent necessary to develop her testimony. See MRE 611(c)(1).

Further, reversal is not required simply because leading questions were asked during trial. In order to warrant reversal, "it is necessary to show some prejudice or pattern of eliciting inadmissible testimony." *People v White*, 53 Mich App 51, 58; 218 NW2d 403 (1974). Where the defendant was not prejudiced by the leading questions, reversal is not required. *Id.* See also *People v Hooper*, 50 Mich App 186, 196; 212

NW2d 786 (1973) ("[T]his Court does not believe a case should be reversed merely because a few technically improper questions are asked. In fact, it is hard to find a trial where every question is exactly proper. In order to require a reversal some prejudice or patterns of eliciting inadmissible testimony must be shown."). In this case, defendant has not demonstrated prejudice. Thus, reversal is not required.

### B. THE PROSECUTOR'S ALLEGED ARGUING OF FACTS NOT IN EVIDENCE

Defendant also claims that the prosecutor argued facts not in evidence and misled the jury regarding key scientific evidence. Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence. *Bahoda, supra* at 282; *People v Fisher*, 220 Mich App 133, 156; 559 NW2d 318 (1996).

Defendant claims that it was improper for the prosecutor to remark during closing argument, "The Judge is going to tell you when we discuss dates, we discuss on or about because it's not uncommon for a child who's been molested to not be able to tell you the exact date." Defendant failed to object to the comment at trial; therefore, this issue is forfeited unless defendant demonstrates outcome-determinative plain error. *Carines, supra* at 763. Although no evidence was introduced to support the prosecutor's contention that child victims of sexual abuse often are unable to recall the exact date of the abuse, any error was not outcome determinative. Indeed, the prosecutor is not required to prove the exact date of a

sexual assault offense. *People v Naugle*, 152 Mich App 227, 235; 393 NW2d 592 (1986).

Defendant also objects to the prosecutor's comment that the victim's complaint about the assault that occurred in March 1997 was not forwarded to the prosecutor's office for an independent review after the victim initially reported the assault to the police. However, contrary to defendant's argument, the prosecutor's comment was indeed based on the evidence presented during trial. Defendant called a police detective to testify that the victim recanted her allegation that defendant sexually assaulted her in March 1997. The prosecutor, on cross-examination of the detective, responded by eliciting testimony that the victim still insisted that defendant had struck her over the head with a gun in March 1997. The detective also admitted that he closed the complaint in 1997 without forwarding it to the prosecutor's office. The prosecutor properly mentioned this fact in an attempt to show why defendant had not been charged with assault in 1997.

Defendant also claims that the prosecutor improperly remarked on a laboratory report that was never admitted into evidence. Defendant did not object to this comment at trial. In any event, defendant's assertion is incorrect, because the laboratory report was indeed admitted into evidence pursuant to a stipulation of the parties. The actual document that was not admitted, which defendant refers to in support of his argument, was a DNA evidence submission form. In objecting to the admission of that form, defense counsel expressly acknowledged that the laboratory report had been admitted into evidence. The prosecutor fairly commented on the report.

Defendant also claims that the prosecutor mischaracterized key scientific evidence by stating that defendant's DNA was found on a condom along with the victim's DNA and that the victim's DNA was also found on defendant's underwear. The prosecutor stated that the evidence showed "an absolute match between the DNA on the condom and [the victim's] DNA and the Defendant's DNA." Defendant insists that DNA evidence does not provide an "absolute match" and that the most one can say is that a person's DNA type is consistent with the DNA type found on a piece of evidence. Although the prosecutor's expert witness did not testify with absolute certainty that the DNA of both defendant and the victim was found on the condom, he did testify as follows:

> Well, as the, the DNA evidence showed, that [the victim's] DNA type matched one of the DNA types that was on the condom, as well as [defendant's] DNA type. Those, those two DNA types, those reference DNA types happen to match the DNA types that I found on the condom.

Also, although the witness did not testify with absolute certainty that the victim's DNA was found on defendant's underwear, he did testify, "When I compared the reference DNA types from [the victim] and [defendant], they matched the DNA, the mixture of DNA types that I found on the briefs." The witness also stated that the chance of the victim's DNA type occurring in the general population was one in seventeen million. The prosecutor was simply arguing the reasonable inference from this testimony—that the DNA of both the defendant and the victim matched the DNA found on the used condom and on defendant's underwear. The comments were proper.

## C. THE PROSECUTOR'S ALLEGED APPEAL TO SYMPATHY FOR THE VICTIM

Defendant next argues that the prosecutor improperly appealed to the jury's sympathy for the victim. During her opening statement, the prosecutor commented as follows:

> Members of the jury, in that darkness that Defendant attacked his stepdaughter . . . and he did something to her that no one should do to any other human being. He treated her in a way that no animal should be treated . . . .

Defendant objected, and the trial court cautioned the prosecutor that the comment "[m]ay be a little inflamed and I ask you to stay away from that sort of language." This is the only comment that defendant specifically claims was designed to elicit sympathy for the victim.

Appeals to the jury to sympathize with the victim constitute improper argument. *People v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984). Defendant contends that the prosecutor's comment was an improper appeal to the jury to sympathize with the victim. In doing so, defendant cites *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988), in which the prosecutor commented that the victim's injuries " 'shouldn't happen to a dog, let alone a ten month old baby.' " This Court in *Dalessandro* held that the prosecutor improperly appealed to the jury's sympathy by repeatedly referring to " 'the poor innocent baby.' " *Id.* In the instant case, by contrast, the prosecutor's comment was isolated, she did not blatantly appeal to the jury's sympathy, and the comment was not so inflammatory as to prejudice defendant. See *People v Mayhew*, 236 Mich App 112, 123; 600

NW2d 370 (1999). Further, the trial court instructed the jury to not be influenced by sympathy or prejudice. Under these circumstances, defendant was not prejudiced by the prosecutor's comment, and reversal is accordingly not required.

### D. THE PROSECUTOR'S ALLEGED ATTACK ON DEFENSE COUNSEL

Finally, defendant argues that the prosecutor improperly accused defense counsel of intentionally using misleading tactics when the prosecutor commented as follows:

> Members of the jury, I know you are probably anxious to get started on your deliberations, but there were a lot of things that Defense Counsel addressed that I have got to respond to. Because the fact of the matter is, members of the jury, apparently the defense in this case is to distract you, make you look over here. Don't pay any attention to the evidence, just look over here, and don't pay any attention to the truth.
>
> You've heard the term "red herrings in the school of blue fish." When the school of blue fish is going beside—behind you or beside you, you're going to be attracted to the red herring. You just had the whole boatload of red herrings thrown at you, and it didn't change the truth. Create an issue by asking the question, I believe is this defense.

Defendant did not object to this remark; therefore, defendant must demonstrate outcome-determinative plain error in order to avoid forfeiture of this issue. *Carines, supra* at 763.

A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury. *Dalessandro, supra* at 580. Here, the prosecutor's comments did suggest that defense counsel was trying to distract the jury from the truth. However, the pros-

ecutor's comments must be considered in light of defense counsel's comments. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). The prosecutor's comments here were made in rebuttal to defense counsel's closing argument, in which defense counsel emphasized discrepancies between the various accounts of the events and then stated as follows:

> So we have that unexplained delay depending on whose story you believe. But again they—the Prosecution wants you to just pick one. I, I mean, these are terrible crimes, folks. This guy's a scumbag. He's kept this poor girl in darkness. Pick one. We don't care which one. We're not going to prove one all the way through. We know that you're so offended—as any normal person would be—by the activity we're alleging, we don't care which one you pick, just pick one. Pick any one, and say he's guilty beyond a reasonable doubt.

Thus, defense counsel suggested that the prosecutor was not concerned about the truth of the events but simply wanted the jury to pick any story and convict defendant simply because the crimes alleged were terrible. It was not improper for the prosecutor to respond by emphasizing the truth of the big picture, despite defense counsel's attempts to find discrepancies between the testimony of various witnesses. Reversal is not required, especially in light of defendant's failure to object.

### E. THE CUMULATIVE EFFECT OF THE ALLEGED
### PROSECUTORIAL MISCONDUCT

Defendant claims that the cumulative effect of the various instances of alleged prosecutorial misconduct requires reversal. The key test in evaluating claims of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Bahoda, supra* at 266-267. As already discussed, the prosecutor's comments did not deny defendant a fair and impartial trial. Reversal is unwarranted.

IV

Finally, defendant claims that his felony-firearm conviction, which related to the March 1997 incident, must be reversed. Defendant notes that the trial court incorrectly charged the jurors by telling them first that the predicate offense for the felony-firearm charge was assault with intent to commit CSC II and subsequently telling them that the predicate offense was CSC I. Defendant further notes that the information specified CSC I as the predicate offense, and he contends that because there was insufficient evidence of CSC I relating to the March 1997 incident, the felony-firearm conviction must be vacated. We agree that the felony-firearm conviction was supported by insufficient evidence.

When reviewing the sufficiency of the evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe,*

440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

The felony-firearm information charged that defendant, in March 1997, possessed a rifle during the commission of CSC I. The evidence relating to the March 1997 incident demonstrated that defendant threatened to kill the victim if she did not remove her underwear. When she refused, defendant hit her over the head with the stock of a rifle, causing her to pass out. When the victim awoke, she was on her bed with her underwear off. A month later, when she reported the incident to the police, a physical examination revealed that she did not have a hymenal ring, which indicated that she may have been sexually penetrated sometime in the past. There was no evidence, however, that the victim had been penetrated during the March 1997 incident. Although circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of a crime, see *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993), the most that can be inferred from the evidence in this case is that defendant removed the victim's underwear after she passed out and therefore attempted to commit some type of sexual assault on her. It cannot be inferred that defendant penetrated her. Indeed, defendant was charged with and convicted of assault with intent to commit CSC II with regard to this incident, presumably because the evidence did not support a finding of penetration to support a CSC I conviction. Thus, even considering the evidence in the light most favorable to the prosecutor, the evidence was not sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant sexually penetrated the victim

in March 1997. *Wolfe, supra* at 515. Therefore, defendant's felony-firearm conviction was not supported by sufficient evidence.

We must now address the question of the appropriate remedy. When a conviction is not supported by sufficient evidence, retrial on the identical charge is prohibited by the Double Jeopardy Clause. US Const, Am V; *Burks v United States*, 437 US 1, 18; 98 S Ct 2141; 57 L Ed 2d 1 (1978); *People v Murphy*, 416 Mich 453, 467; 331 NW2d 152 (1982). See also *People v Hutner*, 209 Mich App 280, 285; 530 NW2d 174 (1995) (vacating the defendant's conviction because the evidence to support it was legally insufficient and remanding for entry of a conviction of a lesser offense). We note, however, that in *People v Johnson*, 206 Mich App 122, 125; 520 NW2d 672 (1994), this Court held that if a conviction is not supported by sufficient evidence, "the appropriate remedy is to remand for entry of a conviction on the lesser included offense and for resentencing, *with the prosecutor having the option to retry the defendant on the original charge if additional evidence is discovered to support it.*" A later panel in *People v Randolph*, 242 Mich App 417, 421, 423; 619 NW2d 168 (2000), relied on *Johnson* in making a similar statement. See MCR 7.215(I)(1) (providing that published opinions of this Court issued on or after November 1, 1990, are binding on other panels of this Court).

*Johnson*, however, misstated the law. In holding that a prosecutor can retry a defendant on a charge not supported by sufficient evidence at a prior trial if additional evidence is discovered to support it, *Johnson* relied on *People v Kamin*, 405 Mich 482, 501; 275 NW2d 777 (1979), overruled in part by *People v*

*Beach,* 429 Mich 450; 418 NW2d 861 (1988), as recognized in *People v Hendricks,* 446 Mich 435, 448; 521 NW2d 546 (1994), and *People v Gridiron,* 185 Mich App 395, 404; 460 NW2d 908 (1990), (On Rehearing), 190 Mich App 366; 475 NW2d 879 (1991), amended 439 Mich 880 (1991). Both *Kamin* and *Gridiron,* however, involved the trial court's erroneous refusal to instruct on a requested lesser-included-offense instruction; they did *not* involve instances of insufficient evidence. Clear authority from both the United States Supreme Court and the Michigan Supreme Court holds that the double jeopardy prohibition bars retrial on a charge for which a reviewing court concludes that the associated conviction was not supported by legally sufficient evidence. *Burks, supra* at 18; *Murphy, supra* at 467. Indeed, "affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding" is the chief evil against which the Double Jeopardy Clause protects. *Burks, supra* at 11.

As noted earlier, MCR 7.215(I)(1) provides that published opinions of this Court issued on or after November 1, 1990, are binding on other panels of this Court. Nevertheless, we need not follow the erroneous remedy set forth in *Johnson* and followed in *Randolph.* Indeed, this Court is bound by decisions of the Michigan Supreme Court, see *People v Beasley,* 239 Mich App 548, 556; 609 NW2d 581 (2000), and by decisions of the United States Supreme Court on federal questions. *People v Riggs,* 223 Mich App 662, 675 (SMOLENSKI, J.), 716 (R. R. LAMB, J.); 568 NW2d 101 (1997). Accordingly, we hold that the prosecutor may

not retry defendant on the identical felony-firearm charge that we reverse today.[2]

There is, however, another remedy. In *Parker v Norris*, 64 F3d 1178, 1180 (CA 8, 1995), the defendant was originally convicted of capital felony murder. The Arkansas Supreme Court reversed the conviction because the killings were not committed during the course of an independent felony. *Id.* The defendant was then retried and convicted of premeditated capital murder, under a different subsection of the same statute. *Id.* at 1180-1181. In his second appeal, the defendant, relying on *Burks, supra* at 18, argued that his trial for premeditated murder was prohibited by the Double Jeopardy Clause. *Parker, supra* at 1180-1181.

The Eighth Circuit Court of Appeals held that the second trial did not violate double jeopardy principles because the reversal of the first conviction resulted not from a true deficiency of evidence to support a capital murder conviction but rather from the prosecutor's issuance of an inappropriate indictment. *Id.* at 1181-1182. In reaching this conclusion, the *Parker* court discussed the United States Supreme Court case of *Montana v Hall*, 481 US 400; 107 S Ct 1825; 95 L Ed 2d 354 (1987):

---

[2] We note that in *Johnson* and *Randolph*, even though the defendants' convictions were not supported by sufficient evidence, there were lesser-included offenses charged to the jury that *were* in fact supported by sufficient evidence. *Johnson, supra* at 125-126; *Randolph, supra* at 421-422. Accordingly, the *Johnson* and *Randolph* panels, while incorrectly stating that the prosecutor could elect to retry the defendant on the original charges, did correctly remand the cases for entry of a conviction of the lesser-included offenses. *Johnson, supra* at 125-126; *Randolph, supra* at 421-423. Here, there is no lesser-included offense for which we can remand for entry of a conviction.

That brings us to *Montana v Hall*, 481 US 400; 107 S Ct 1825; 95 L Ed 2d 354 (1987), a case the district court found dispositive. The Montana Supreme Court had reversed defendant's conviction of incest, and barred his retrial on double jeopardy grounds, because the incest statute did not apply to sexual assaults against stepchildren. The Supreme Court reversed, concluding that the Double Jeopardy Clause did not bar retrial on the different charge of sexual assault because the state court's reversal was "on grounds unrelated to guilt or innocence." "[T]he State simply relied on the wrong statute. . . . It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument." 481 US at 403-04; 107 S Ct at 1827.

Parker argues that *Hall* can be disregarded as "a weird fact-based variance from double jeopardy jurisprudence." We disagree. Almost a century ago, the Supreme Court held that the Double Jeopardy Clause does not bar retrial of a defendant whose first conviction was reversed because of a legally defective indictment. *United States v Ball*, 163 US 662, 671-72; 16 S Ct 1192, 1195-96; 41 L Ed 300 (1896). In *Burks* itself, the Supreme Court commented, "We have no doubt that *Ball* was correct in allowing a new trial to rectify *trial error*." 437 US at 14; 98 S Ct at 2149 (emphasis in original). Thus, the district court correctly proceeded to determine whether Parker's first conviction was reversed because of a "defect in the charging instrument," as in *Hall*, or because of an evidentiary insufficiency equivalent to a verdict of acquittal, as in *Burks*. See *United States v Todd*, 964 F2d 925, 929 (9th Cir, 1992); *United States v Davis*, 873 F2d 900, 903-06 (6th Cir [1989]). [*Parker, supra* at 1181-1182.]

Here, our reversal is based, in essence, on a "defect in the charging instrument." Indeed, the complaint and warrant alleged that defendant committed CSC I and felony-firearm associated with CSC I with respect to the March 1997 incident. The information, however, charged defendant with assault with intent to

commit CSC II and with felony-firearm associated with CSC I with respect to the March 1997 incident. Evidently, before defendant was arraigned in the circuit court, the prosecutor or examining magistrate determined that there was insufficient evidence to support a CSC I conviction with respect to the March 1997 incident, and thus an information was filed charging defendant instead with assault with intent to commit CSC II. Notwithstanding this, the information was not amended to list assault with intent to commit CSC II as the predicate offense for the felony-firearm charge. If the prosecutor *had* amended the felony-firearm information in this manner, then a felony-firearm conviction would have been supported by sufficient evidence. Indeed, there was clear evidence that during the March 1997 incident, defendant possessed a rifle while committing assault with intent to commit CSC II. Accordingly, there was no "evidentiary insufficiency equivalent to a verdict of acquittal" in this case; instead, there was a defect in the charging instrument. See *id.* at 1182. Retrial using the appropriate charge is therefore appropriate.

As stated by the district court in *Parker*:

> *Hall,* therefore, at least means this: If the state convicts a defendant under the wrong statute (that is, a statute that does not encompass the defendant's otherwise criminal conduct), and that conviction is overturned on appeal, the Double Jeopardy Clause does not forbid retrial under the correct statute (that is, the statute that makes such conduct criminal), so long as there is sufficient evidence to convict under that statute. [*Parker v Lockhart*, 797 F Supp 718, 725 (ED Ark, 1992), rev'd on other grounds 64 F3d 1178 (CA 8, 1995).]

Here, because the prosecutor listed the wrong statute as the predicate offense for defendant's felony-firearm charge and because there is sufficient evidence to convict defendant of felony-firearm using a different predicate offense, retrial using the applicable predicate offense is permitted. Accordingly, we remand this case for retrial using an appropriate felony-firearm charge.[3]

Defendant's conviction and sentence for the felony-firearm charge are reversed, but the remaining convictions and sentences are affirmed. Remanded for a new trial on the felony-firearm charge. We do not retain jurisdiction.

---

[3] In light of our disposition with regard to defendant's felony-firearm conviction, we need not address defendant's argument that the trial court's instructions with regard to the felony-firearm charge were erroneous.