# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL ANGELO DITRAPANI,

Defendant-Appellant.

UNPUBLISHED
February 14, 2017

No. 329676
Macomb Circuit Court
LC No. 2014-003849-FC

Before: WILDER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). We affirm.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that defense counsel rendered ineffective assistance of counsel on a number of grounds. We disagree. Because defendant did not raise this claim in the trial court, and this Court denied his motion to remand for a *Ginther*[1] hearing, our review is limited to errors apparent on the record. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Thus, if the record does not contain sufficient detail to support the claim, defendant has effectively waived the issue. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Criminal defendants have a right to effective assistance of counsel under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To prevail on an ineffective assistance of counsel claim, the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-1-

bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted).

## A. FAILURE TO MAKE A MOTION

Defendant first argues that he received ineffective assistance of counsel because defense counsel failed to file a motion to adjourn trial and to revisit defendant's previous request for a forensic investigation "of the complainants' and witnesses' electronics," after counsel learned of additional evidence supporting that request. We disagree.

Prior to defendant's trial, defense counsel filed a motion requesting a forensic examination of various electronic devices and social networking/media sites used by the two minor victims and their mother on the ground that such analysis "may" show that the allegations against him were fabrications. The trial court denied this request, holding that the request constituted a "fishing expedition" and was not necessary to defendant's defense. Subsequently, defendant argues, defense counsel learned that defendant had "caught" the two minor victims, ages 12 and 13, "hiding" in a bathroom while they chatted and exchanged photographs with an older man they had met on a dating website. Defendant argues that, after learning this information, defense counsel should have "immediately filed a motion to adjourn the trial, and to revisit defendant's motion for forensic investigation." Defendant claims that, because counsel failed to do so, he was denied information necessary to his defense.

The decision whether to make a motion is a matter of trial strategy and professional judgment entrusted to a defendant's trial counsel. *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). And it is clear from the record in this case that defense counsel may reasonably have concluded that the trial court would not revisit defendant's request for a "forensic investigation" because counsel had already argued that such an investigation might lead to evidence helpful to the defense and the trial court disagreed. This purportedly "new" information was not likely to cause the trial court to rule differently. That is, even if the victims were "chatting" with an older man on a social website using their electronic devices as defendant claimed, such evidence would not tend to discredit or refute the victims' claims that defendant sexually assaulted them and the manner in which they alleged he did so. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Therefore, on this record, we cannot conclude that defense counsel's failure to renew the motion fell below an objective standard of reasonableness under prevailing professional norms. See *Vaughn*, 491 Mich at 669.

## B. CROSS-EXAMINATION OF WITNESSES

Defendant also contends that he received ineffective assistance of counsel because defense counsel failed to adequately cross-examine the two victims and another minor-witness, ES, AS, and ED, as to whether "they had encountered anything of a sexual nature on the internet, or on social media." We disagree.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Additionally, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are

presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

In his brief on appeal, defendant argues that if defense counsel had adequately cross-examined ES, AS, and ED on their exposure to "anything of a sexual nature on the internet, or on social media," there is a reasonable probability that the jury would have acquitted him. In other words, the crux of defendant's argument is that such elicited information may have discredited their testimony. Contrary to defendant's argument, the record reveals that defense counsel questioned ES, AS, and ED on their use of electronics and specifically their use of "Amigo," which ES explained was "an app for talking to strangers." And defense counsel successfully elicited testimony from ED that defendant had caught ES chatting with an older man on Amigo. Defense counsel also elicited testimony from all three witnesses regarding the details of each alleged sexual assault incident in an attempt to illustrate discrepancies between each witness's reporting of those incidents. Defense counsel was not required to further question ES, AS, and ED because the cross-examination of each witness was a matter of trial strategy that we will not second-guess. See *Unger*, 278 Mich App at 242-243; *Rockey*, 237 Mich App at 76. Therefore, on this record, we cannot conclude that defense counsel's cross-examination of the witnesses fell below an objective standard of reasonableness under prevailing professional norms. See *Vaughn*, 491 Mich at 669.

## C. FAILURE TO OBJECT TO ALLEGED PROSECUTORIAL MISCONDUCT

Finally, defendant argues that he received ineffective assistance of counsel because defense counsel failed to object on the basis of alleged prosecutorial misconduct. We disagree.

As discussed in more detail below, the prosecutor's line of questioning posed to the mother of the two victims and the prosecutor's statements made during closing and rebuttal arguments were proper and did not constitute prosecutorial misconduct. See *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Because the prosecutor's statements were proper, defense counsel was not required to make a meritless objection. See *Fike*, 228 Mich App at 182. Accordingly, defendant fails to establish a claim for ineffective assistance of counsel. See *Vaughn*, 491 Mich at 669.

## II. PROSECUTORIAL MISCONDUCT

Next, defendant contends that the prosecutor committed misconduct when she improperly vouched for the credibility of the two victims and appealed to the jurors' sympathy. We disagree. A defendant must "contemporaneously object and request a curative instruction" to preserve an issue of prosecutorial misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel did not object at any point during the

trial on the basis of prosecutorial misconduct, and did not request a curative instruction from the trial court. Thus, defendant's claims are unpreserved and reviewed for plain error affecting his substantial rights. *People v Kowalski*, 489 Mich 488, 505-506; 803 NW2d 200 (2011); *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. The prosecutor's comments are evaluated "in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

A prosecutor is generally given "great latitude regarding his or her arguments and conduct at trial," *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and is not required to confine his or her "argument to the blandest possible terms," *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Moreover, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## A. VOUCHING FOR CREDIBILITY OF WITNESSES

Defendant argues that the prosecutor improperly vouched for the credibility of ES and AS when she posed the following question to their mother, Catherine: "After the CARE House interview, on September 11, 2014[,] did there come a time when you became more sure of the truth in the allegation?"

"[A] prosecutor may not vouch for the credibility of a witness or suggest that he or she has some special knowledge that the witness is testifying truthfully." *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014). But here, considering the prosecutor's statements in context, the prosecutor did not improperly vouch for the credibility of ES and AS. First, with respect to Catherine's testimony, defendant mischaracterizes the prosecutor's question as an attempt to elicit improper opinion testimony. In relevant part, the following exchange occurred between the prosecutor and Catherine:

[*Prosecutor*]: Prior to the allegations being made, was there ever a time when the girls told you what was happening?

[*Catherine*]: No.

[*Prosecutor*]: Had they told you that something was happening, how would you have reacted? What would you have done?

[*Catherine*]: If they had told me that something was happening I would have taken all four girls, taken them out of the home and called [the] police and then sorted it out later.

[*Prosecutor*]: Was there ever a time when you and Paul had been working during the day at [sic] the Defendant had been home with the girls that you would get home from work and there had been one of these days when, you know, they all [sic] been fussing at each other and been kind of a rough day within the house that the girls rushed up to you and, you know, blurted out, "he grabbed me?" Anything of that nature that, you know, caused you any concern?

[*Catherine*]: No.

[*Prosecutor*]: After the CARE House interview, on September 11, 2014[,] did there come a time when you became more sure of the truth in the allegation?

[*Catherine*]: Yes.

[*Prosecutor*]: When was that?

[*Catherine*]: It would have been on the following Monday.

[*Prosecutor*]: The Monday after the CARE House interview?

[*Catherine*]: Yes.

Based on the prosecutor's line of questioning, she was not trying to elicit opinion testimony as to whether ES's and AS's accusations were truthful as defendant suggests; rather, the prosecutor was trying to establish a foundation setting forth the timeline of when Catherine first learned of the specific details of the allegations. Because Catherine testified that she was initially unaware of the specific details surrounding the CPS complaint, the prosecutor's line of questioning was permissible to further develop Catherine's testimony and to establish when she first became aware that ES's and AS's allegations were that defendant sexually assaulted them. See *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003) ("The prosecutor's good-faith effort to admit evidence does not constitute misconduct."). Thus, defendant fails to demonstrate that plain error has occurred. See *Kowalski*, 489 Mich at 505-506.

Defendant also argues that the prosecutor committed misconduct when she made the following statements during her closing argument: (1) "[T]hey are being truthful because they are telling you exactly what happened to them, and they don't have any reason to make it up," (2) "[W]hat happened to them is what they told you happened to them," and (3) "They don't have any reason to lie. They have nothing to gain by lying in this case." By making these statements in her closing argument, defendant contends the prosecutor improperly injected her personal opinion that the victims' testimony was truthful.

However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). And, here, the prosecutor did not improperly vouch for the credibility of ES and AS by commenting on the credibility of her witnesses, especially in light of the conflicting evidence presented at trial. More specifically, both ES and AS testified that defendant sexually assaulted them. Defendant took the stand and denied ever touching either victim. Instead,

defendant testified that he believed Catherine was using ES and AS "as a pawn to get [him] out of [Paul Simpson's] house permanently." Because of this conflicting evidence, defendant's guilt depended on which witnesses the jury believed, and thus, the prosecutor's statements were not improper. See *id*.

Moreover, the trial court instructed the jurors to only consider the evidence presented at trial and not the lawyers' statements and arguments, and reminded them that their job included determining the credibility of each witness. These instructions were sufficient to cure any potential prejudicial effect, and defendant fails to rebut the presumption that the jury followed the court's instructions. See *Abraham*, 256 Mich App at 279.

## B. APPEAL TO THE JURY'S SYMPATHY

Next, defendant argues that the prosecutor improperly appealed to the jury's sympathy, and as a result, prejudiced defendant. More specifically, defendant challenges the following arguments made by the prosecutor during her closing argument: (1) "You all now have the opportunity to view him in a different light than the character witnesses who still think that he is God's greatest gift," and (2) "Your decision today is not going to restore [ES] and [AS] to their former self but it can certainly put them on the path to moving forward." Additionally, defendant challenges the following statements made by the prosecutor during her rebuttal argument:

> I want you to think about the case as a puzzle. Everybody has done puzzles, whether you do small puzzles or big puzzles, some times [sic] you get to the end there is [sic] some pieces missing. And let's say that you are doing a puzzle with the American flag on it. One of the huge thousand piece puzzles.

> \* \* \*

> In this case the analogy of the missing pieces are the inconsistencies in the case and there were inconsistencies. We know that. And we all acknowledge that, but the question is [sic] the end of the day when you go back to deliberate about the testimony, those inconsistencies. Those missing puzzle pieces is [sic] not enough for you not to know the big picture of being the American flag.

"Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). Although a prosecutor may not argue facts unsupported by the evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence. *Id*. at 588.

At trial, defendant presented two character witnesses—his brother Anthony and his nephew. First, Anthony took the stand. When asked by defense counsel how he would describe his brother, Anthony responded, "he's big hearted, but he has a mean streak." Defendant's nephew took the stand next. When defense counsel asked him how he would describe defendant, his nephew responded, "Loving, caring uncle. You know stern, but respectful." Both witnesses acknowledged that they had no personal knowledge of the sexual assault incidents involving defendant. Based on this evidence presented at trial, it was reasonable for the prosecutor to comment on the jury's opportunity to view the credibility of these witnesses, and thus, defendant

failed to establish that plain error occurred.  See *Kowalski*, 489 Mich at 505-506; *Watson*, 245 Mich App at 588.

Additionally, the prosecutor's statement, "Your decision today is not going to restore [ES] and [AS] to their former self but it can certainly put them on the path to moving forward," was a reasonable inference based on the evidence presented at trial.  Both ES and AS testified to their own separate sexual assault incidents involving defendant.  Each one also testified that they were under 13 years old when these incidents occurred.  Thus, based on this evidence, it was reasonable for the prosecutor to comment and infer that, because of their age and exposure to sexual assault, they could find comfort in the jury returning a guilty verdict.  Accordingly, defendant failed to establish that plain error occurred.  See *Kowalski*, 489 Mich at 505-506; *Watson*, 245 Mich App at 588.

Finally, the prosecutor's statements referencing a puzzle of the American flag did not constitute misconduct.  A review of the record reveals that the prosecutor's statements were in response to defense counsel's statement made during his closing argument that the evidence could be viewed as being similar to a jig-saw puzzle.  Because the prosecutor's statements were made in response to defense counsel's reference during his closing argument, there is no error. See *Watson*, 245 Mich App at 593.

Moreover, the trial court instructed the jurors not to let sympathy or prejudice influence their decision and not to consider the lawyers' statements and arguments as evidence when making a decision.  These instructions were sufficient to cure any potential prejudicial effect of any alleged error, and defendant fails to rebut the presumption that the jury followed the court's instruction.  See *Abraham*, 256 Mich App at 279.  Accordingly, defendant has failed to show that he was denied a fair and impartial trial as a consequence of prosecutorial misconduct.  See *Brown*, 279 Mich App at 134.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly