# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSHUA LEE THORPE,

      Defendant-Appellant.

UNPUBLISHED
August 10, 2017

No. 332694
Allegan Circuit Court
LC No. 13-018428-FH

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under the age of 13). Defendant was sentenced to 71 months to 15 years' imprisonment for the convictions, and, pursuant to MCL 750.520c(2)(b), because of the victim's age and the fact that defendant was over 17 years old, defendant was also sentenced to lifetime electronic monitoring under MCL 750.520n(1). He now appeals as of right, and finding no error warranting reversal, we affirm.

Defendant first argues that the trial court improperly allowed the prosecution's expert witness to vouch for the victim's credibility by testifying about the very small percentage of children who, in his experience, lie about allegations of sexual abuse. Evidence of such percentages was held to be inadmissible under MRE 702[1] in *People v Peterson*, 450 Mich 349, 375-376; 537 NW2d 857 (1995), wherein our Supreme Court observed and ruled:

> [T]he trial judge erred in the following areas. First, the experts . . . improperly vouched for the veracity of the child victim. For example, Gillan was

---

[1] MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

allowed to testify that children lie about sexual abuse at a rate of about two percent. O'Melia was allowed to testify, over defense objection, that of the cases and studies he was familiar with, there is about an eighty-five percent rate of veracity among child abuse victims. Although we have no basis to dispute these numbers, their inherent inconsistency shows the difficulties that arise when attempting to vouch for the credibility of a witness. Certainly neither witness stated that the child victim was telling the truth. However, the risk here goes beyond such a direct reference. Indeed, as we have cautioned before, the jury in these credibility contests is looking "to hang its hat" on the testimony of witnesses it views as impartial. Such references to truthfulness as go beyond that which is allowed under MRE 702.

The challenged testimony was elicited on redirect-examination by the prosecutor, and we are somewhat sympathetic to the trial court's view that defendant opened the door on the issue during cross-examination by asking the expert whether children can lie and manipulate, to which the expert responded in the affirmative. Given the context of the case and the area of the witness's expertise, i.e., child sexual abuse, said testimony could have easily been interpreted by the jury to suggest that children alleging sexual abuse lie about the purported abuse just like children can lie in general about anything. It is arguable that defense counsel's questioning referencing truthfulness was itself violative of MRE 702 under *Peterson*.

Regardless, assuming error and even proper preservation of the argument, reversal is unnecessary as the error was harmless. MCL 769.26; *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999). The victim testified unequivocally about two incidents where defendant touched her vagina and one incident where defendant made the victim touch his penis. Her accounts were detailed with respect to where she, her stepsister, and defendant were situated in the room when the abuse occurred. The victim testified that she decided that she no longer wished to visit defendant, who is her stepsister's father but not her father, by the fall of 2012, after the incidents had occurred. The victim's mother corroborated the victim's testimony that she was the one who decided to stop visiting defendant at that time. The mother's account of the victim's behavioral changes was also consistent with the prosecution's expert's testimony about the typical behaviors exhibited by child victims of sexual abuse. Furthermore, as already indicated, defense counsel had elicited testimony from the expert that children can lie and be manipulative. And, on recross-examination, the expert conceded that the low percentage upon which he testified only represented the false allegations that were actually discovered to be false. Indeed, during his closing argument, defense counsel highlighted the expert's testimony that children can lie and that the low percentage only reflected known false allegations. Additionally, even during redirect-examination by the prosecution, the expert admitted that "[t]here is literature out there that is extremely variable in its . . . identification of fabricated disclosures." The expert also identified certain factual situations in which children were found to be lying regarding sexual abuse. Defendant has simply not established the requisite prejudice to warrant reversal of the convictions.

Defendant next argues that the trial court erred in precluding him from presenting proper impeachment evidence relative to the victim's credibility in two instances. The first instance concerned the victim's testimony that a dog was present in defendant's trailer during the sexual abuse. Defendant sought to elicit testimony from defendant's mother regarding when the dog had died, apparently in an effort to establish that the dog was dead when the alleged abuse

occurred, thereby calling into question the victim's credibility. During a bench conference outside the presence of the jury and defendant's mother following a relevancy objection by the prosecutor, defense counsel stated that he believed that defendant's mother would testify that the dog died prior to the incidents of abuse. At the end of the bench conference and absent a ruling on the objection, defense counsel indicated that he was going to talk to his client, and the court took a short recess. At the conclusion of the recess, the jury and defendant's mother returned to the courtroom, the court called the attorneys to the bench, but no ruling was made on the record, and the examination of defendant's mother continued without any questions concerning the dog. On this record and the absence of a definitive offer of proof by defendant during the lower court proceedings, MRE 103(a)(2), we have no basis to assess and rule on this issue. We do not know whether defendant's mother would have actually testified to the dog having died prior to the instances of sexual abuse. And there is no ruling by the trial court to examine. Indeed, we cannot even tell if defense counsel perhaps decided to withdraw the question after consulting with his client. Moreover, giving defendant the benefit of numerous assumptions on this issue, we cannot conclude that conflicting testimony about the dog's presence in the trailer when the abuse occurred would have tainted the victim's testimony to such a degree that it would have undermined her credibility as to the assaults in the eyes of the jury. MCL 769.26; *Lukity*, 460 Mich at 493-494. Reversal is unwarranted.

Next, claiming a prior inconsistent statement, MRE 613(b), defendant maintains that the trial court erred in not allowing defendant's mother to testify that the victim told her that she was only assaulted once by defendant, considering that the victim had testified as to three separate sexual assaults. On earlier cross-examination of the victim, she admitted that it was "possible" that she informed defendant's mother that the sexual abuse occurred one time; there was no denial of the claim. When defense counsel queried defendant's mother on the subject, the prosecutor objected on hearsay grounds and a bench conference was conducted, after which defense counsel moved on with a different line of questioning, although the trial court did not make a ruling on the record. Again, we cannot discern whether the court ruled against defendant or whether defense counsel freely chose not to pursue the line of questioning.[2] Nor was there an offer of proof. Regardless, the victim conceded that it was possible that she had told defendant's mother that defendant assaulted her once, so we cannot find any prejudice, MCL 769.26, assuming that defendant's mother was prepared to testify to such a conversation, that the trial court actually ruled to exclude the testimony, and that the presumed ruling constituted error. Reversal is unwarranted.[3]

---

[2] We do note that to the extent that the trial court may have ruled to exclude the evidence on this matter, as well as that pertaining to the dog, but did not do so on the record, the court needs to appreciate that such a practice does not facilitate appellate review and all evidentiary rulings need to be made on the record. We emphasize, however, that we do not know whether the court made rulings outside the record, so our admonishment is purely conditional.

[3] For the reasons expressed above, we likewise reject defendant's accompanying argument that the exclusion of the purported impeachment evidence denied him the constitutional right to present a defense.

Next, defendant argues that he was denied a fair trial as a result of prosecutorial misconduct where the prosecutor vouched for the credibility of the victim and suggested that defense counsel was intentionally attempting to mislead the jury. Given defendant's failure to object to any of the prosecutor's remarks at trial now being challenged, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant initially challenges three specific statements by the prosecutor during closing and rebuttal arguments on the ground that they constituted improper vouching for the victim's credibility. Although a prosecutor may not vouch for the credibility of a witness by suggesting that he or she has some special knowledge of the witness's truthfulness, *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009), a prosecutor is permitted to argue from the facts in evidence that a particular witness is credible or, on the other hand, is not worthy of belief, *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008). Viewing the three alleged instances of misconduct, it is clear to us that the prosecutor was simply arguing in favor of the victim's credibility on the basis of the evidence presented at trial and not on any special knowledge of the victim's credibility. There was no plain error affecting defendant's substantial rights.

Finally, defendant claims that the prosecutor disparaged defense counsel. "A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). Here, defense counsel pointed to some of the claims made by the victim during her trial testimony, asserting that she did not mention them during her forensic interview and the preliminary examination. Defense counsel also highlighted alleged deficiencies in the forensic interview process. The prosecutor merely responded by arguing that the victim had actually testified consistently between the preliminary examination and the trial and that forensic protocol procedures were properly followed. These arguments were based on the trial evidence and reasonable inferences arising from that evidence. *Unger*, 278 Mich App at 236. The prosecutor's comments were a proper response to defense counsel's arguments. See *Watson*, 245 Mich App at 592-593 ("It was not improper for the prosecutor to respond [to defense counsel's argument] by emphasizing the truth of the big picture, despite defense counsel's attempts to find discrepancies between the testimony of various witnesses."). The prosecutor did not suggest that defense counsel was intentionally attempting to mislead the jury. There was no plain error affecting defendant's substantial rights.[4]

Affirmed.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly

---

[4] Defendant's associated claim that counsel was ineffective for failing to object to the prosecutor's comments lacks merit, because there was no misconduct and counsel is not required to raise futile objections. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).