# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GALEN KELLY MCLEAN,

Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No. 334153
Cass Circuit Court
LC No. 15-010243-FC

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a two-day jury trial, of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under 13 years of age), one count of conspiracy to commit CSC I, MCL 750.157a(a), and one count of failure to register as a sex offender, MCL 28.729. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to four concurrent life sentences for the conspiracy conviction and three CSC I convictions, and to 4 to 15 years' imprisonment for the failure-to-register conviction; with credit for 333 days in jail. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of the sexual abuse of a friend's six year-old daughter, MH. Defendant, a registered sex offender, and his wife[1] took MH into their home in October 2014 after her mother's housing condition had become unstable. MH slept in a child's bed in the bedroom shared by defendant and his wife.

MH testified at trial that defendant used his penis to penetrate her mouth three times and her vagina[2] at least once; she additionally testified that defendant and his wife used a vibrator (which she called a "pink buzzer") to penetrate her vagina, although she did not specify which of

---

[1] Ashely McClean pleaded guilty to one count of third-degree criminal sexual conduct CSC III, MCL 750.520d(1)(a). She did not testify at defendant's trial, nor is she a party to this appeal.

[2] MH actually used euphemisms to refer to certain body parts, as discussed in greater detail later in this opinion.

-1-

them had physically inserted it. MH testified that defendant's wife was present during all of these assaults.

MH was returned to her mother's care in December 2014. In April 2015, defendant moved to Missouri. MH disclosed the abuse to her mother in May 2015, and she subsequently informed the Cass County Sheriff's Department. In June 2015, a sexual assault nurse examiner examined MH at the Sheriff's Department's request. MH told the nurse examiner that defendant and his wife had used their tongues on her vagina. She also told the nurse examiner that defendant had forced her to touch his penis and had penetrated her mouth and vagina with his penis. MH also stated that defendant and his wife had inserted "a pink toy that made a buzzing noise" into her vagina at least 10 times, hurting her. The nurse examiner testified to all of this. The nurse examiner also testified that MH's examination revealed no physical evidence that she had been sexually assaulted, but because the assaults had occurred months earlier and genitals heal rapidly, this fact was not surprising.

Cass County Sheriff's Detective Kristin Daly testified that defendant's sex offender registration listed his address as being in Dowagiac, Michigan until July 8, 2015. However, Daly was informed in June 2015 by MH's mother and another party that defendant and his wife had left the state. Defendant was arrested in Missouri in late July or early August 2015.

At the beginning of the second day of trial, the prosecution moved to amend the felony information relative to one of the CSC I counts. The prosecution made the motion in response to MH's testimony describing penetration with a vibrator but not with a finger. The motion therefore sought to amend that count to allege that defendant had penetrated MH's vagina with an object, rather than digitally, as the information had initially alleged. The trial court granted the motion.

Defendant was convicted and sentenced as described. This appeal followed. In March 2017, defendant untimely moved this Court to remand his case for a *Ginther*[3] hearing based on his trial counsel's alleged ineffectiveness in failing to investigate and present a substantial defense to the failure-to-register charge. This Court denied the motion.[4]

## II. EVIDENTIARY CHALLENGES

Defendant argues that the trial court erred when it allowed the prosecution to ask MH leading questions, and that the trial court abused its discretion by allowing the nurse examiner to testify to statements made by MH during her medical examination. We disagree with both assertions. Defense counsel objected to the prosecution's questions during trial on the ground that they were improper leading questions; we therefore review for an abuse of discretion the trial court's decision to allow the questions. *In Re Susser Estate*, 254 Mich App 232, 239; 657

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v McLean*, unpublished order of the Michigan Court of Appeals, issued April 18, 2017 (Docket No. 334153).

NW2d 147 (2002). Defense counsel did not object to the nurse examiner's testimony; this issue is therefore unpreserved and reviewed for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Plain error must be a clear and obvious error that affected a defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## A. LEADING QUESTIONS

Generally, leading questions are not permitted on direct examination. MRE 611(d); *Susser Estate*, 254 Mich App at 239-240. However, a trial court has discretion to grant a party "a considerable amount of leeway" in asking leading questions of child witnesses. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411(2001). Further, the prosecution's use of leading questions does not warrant reversal if a defendant was not prejudiced as a result. *Id*. at 587-588.

Our review of the record shows that, while some of the prosecution's questions were leading, none require reversal of defendant's convictions. MH was only eight years old at the time of trial, and the record shows that she found it awkward and uncomfortable to have to testify regarding her sexual abuse at the hands of defendant. Further, she was able to describe some of the sexual abuse, most notably the penetration with a vibrator, without the use of leading questions. MH admitted that she was "not really focused today" and had difficulty remembering questions, and she asked the prosecution to repeat or clarify questions that she did not understand. It is clear from the record that the prosecution resorted to leading questions only when MH's attention wandered. Given MH's age and the nature of the subject matter to which she was testifying, it was within the trial court's discretion, *Susser Estate*, 254 Mich App at 239, to conclude that "[a]ny leading of the witness was only to the extent necessary to develop her testimony." *Watson*, 245 Mich App at 587.

## B. ADMISSION OF MH'S STATEMENTS TO THE NURSE EXAMINER

MH's statements to the nurse examiner were hearsay. MRE 801. Unless an exception exists, hearsay is inadmissible. MRE 802. "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214–215; 816 NW2d 436 (2011). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer* (*After Remand*), 439 Mich 310, 322; 484 NW2d 621 (1992).

To determine whether a child victim's statements to a medical professional are trustworthy, we review those statements in light of the relevant factors listed in *Meeboer*:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that

-3-

the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

Regarding the reasonable necessity of a statement to the diagnosis and treatment of a victim, we note that a victim's injury need not be readily apparent, and that

[p]articularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. [*Mahone*, 294 Mich App at 215, citing *People v Garland*, 286 Mich App 1, 9–10; 777 NW 2d 732 (2009).]

Application of the *Meeboer* factors here supports the admission of MH's statements to the nurse examiner under MRE 803(4). MH was 7 years old when she was examined by the nurse examiner. There was no evidence submitted that the nurse examiner used leading questions during the examination. MH used childlike euphemisms for genital and anal areas. The nurse examiner testified that MH's testimony involving the pain she felt was appropriate to her age and unlikely to be the result of coaching, as most adults were unaware of the "extreme high sensitivity" of a prepubescent girl's hymen. MH was also able to describe the vibrator in detail. And while the nurse examiner did state that the Cass County Sheriff's Department had referred MH for examination, and the examination did take place several months after the alleged abuse, the examination was not initiated by the prosecution, but rather was initiated almost immediately after MH disclosed the abuse for the first time. No evidence was presented of any motive that MH would have had to fabricate her statements; defendant and his wife had left the state and were not then involved in MH's life. On balance, we find that MH's statements to the nurse examiner were trustworthy. *Meeboer*, 439 Mich at 324-325.

Regarding the reasonable necessity of the statements to MH's diagnosis and treatment, the nurse examiner testified that a detailed history of the abuse that MH had suffered was necessary to determine what kind of injuries she might have (such as whether defendant had actually penetrated her "vaginal vault") or what specific tests (such as tests for various sexually transmitted infections) and treatments MH might require in the future. Again, and especially because of the latent nature of many sexual abuse injuries, we conclude that MH's statements were necessary to her diagnosis and treatment. *Mahone*, 294 Mich App at 215. No plain error occurred in their admission.

III. AMENDMENT OF THE INFORMATION

Defendant also argues that the amendment of the information mid-trial to comport with the proofs offered at trial denied him his right to a fair trial. We disagree. Defendant objected to

the prosecution's motion to amend the information.  We review for abuse of discretion a trial court's decision to grant or deny a motion to amend the information. *People v McGee*, 258 Mich App 683, 687; 672 NW2d 191 (2003).

A trial court may abuse its discretion if its grant of the prosecution's motion to amend the information results in "unfair surprise or prejudice" to defendant.  *Id.*, quoting MCR 6.112(H). MCL 767.76 provides in relevant part that the trial court "may at any time before, during or after the trial amend the indictment[5] in respect to any defect, imperfection, or omission in form or substance or any variance with the evidence."  An amended information does not prejudice a defendant if it does not add a new offense, does not require a different defense or evidence, and was not a surprise. *Id.* at 688.

Here, the amendment of the information was simply to change one of the CSC I counts from digital penetration to penetration with an object.  No new counts were added.  Defendant's defense was that MH was not credible, that her age and the amount of attention that she received from law enforcement in telling her story rendered her testimony suspect, and that her allegations were not corroborated by any physical evidence.  The amendment of the information did not require that defendant alter this defense.  Further, in light of the fact that defense counsel referred to and questioned the nurse examiner regarding her report on MH's medical evaluation, defendant could hardly have been surprised that MH's statement regarding penetration by a vibrator would become an issue.  We conclude that the trial court did not abuse its discretion by granting the prosecution's motion to amend the information. *McGee*, 258 Mich App at 687.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO REGISTER

Defendant also argues that his trial counsel was ineffective in failing to pursue a substantial defense to the charge of failing to register as a sex offender.  We disagree.  Whether a defendant has received the effective assistance of counsel is a mixed question of fact and law. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).  We review for clear error a trial court's factual findings, while we review de novo questions of law.  See  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995).  To establish ineffective assistance of counsel, defendant first must show that his counsel's performance fell below an objective standard of reasonableness.  In doing so, defendant must overcome the strong presumption that counsel employed sound trial strategy.  Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).  Defense counsel's decisions regarding whether to call witnesses are generally presumed to be trial

---

[5] Unless otherwise noted, "all laws applying to prosecutions on indictments also apply to prosecutions by information." *McGee*, 258 Mich App at 687 (citations omitted).

strategy; counsel's failure to present a witness is ineffective assistance only when it deprives a defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398.

Here, defendant argues that his trial counsel was ineffective in failing to call an unnamed Michigan State Police Officer as a witness to testify that defendant had informed the State Police of his move and "was told to just register when he reached Missouri." Defendant argues that this failure denied him a substantial defense—that he informed the proper authorities and that they simply failed to update the registry. However, defendant does not name this putative witness or provide an affidavit from the witness describing any testimony that would have been offered. Defendant has thus not established the factual predicate for his claim. *People v Hoag*, 460 Mich 6; 594 NW2d 57 (1999).

In any event, it seems to be sound trial strategy for defense counsel to focus on defending against the much more serious charges facing defendant, which carried the potential for a life sentence. This is especially true when the record shows that defendant spent at least two months in Missouri without ensuring that his Michigan registration was corrected. It is far from certain that the testimony of the unnamed police officer would have altered the jury's conclusion. We conclude that defendant has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, nor has he shown a reasonable probability that the outcome of the proceeding would have been different if his counsel had called this unnamed witness. *Armstrong*, 490 Mich at 289-290.

## V. SENTENCING CHALLENGES

Defendant also raises numerous challenges to his sentencing, including his habitual offender enhancement, the use of his prior convictions in scoring Prior Record Variables (PRV)s, and the scoring of several Offense Variables (OV)s. For the reasons below, we conclude that all of these challenges lack merit.

## A. HABITUAL OFFENDER ENHANCEMENT

Defendant argues the trial court erred by sentencing him as a fourth offense habitual offender, MCL 769.12, based on three felony convictions that had occurred in Missouri. We disagree. Defendant did not challenge this enhancement below; we therefore review this issue for plain error. *Unger*, 278 Mich App at 235.

Defendant argues that the Missouri offense of "Sexual Misconduct with a Child 1st" is not a felony in Missouri. The pre-sentence investigation report (PSIR) lists this offense as "Sexual Misconduct Involving a Child by Indecent Exposure—1st Degree (Felony Class D)." Defendant provides a citation to a Missouri statute entitled "sexual misconduct, 1st Degree" that is indeed a misdemeanor under Missouri law. See MO Rev Stat § 566.093. However, that statute makes no reference to child victims, and it is not clear that defendant was convicted under that statute. The Missouri criminal code also contains the felony offense of "sexual misconduct involving a child," which may be committed, inter alia, by an offender exposing his genitals to a child less than 15 years of age. See MO Rev Stat § 566.083. The circumstances of defendant's offense, according to the PSIR, involved him exposing his genitals to a 12-year-old girl. Although the PSIR does not provide a statutory subsection, there is no evidence in the record to support

defendant's contention that his conviction was under MO Rev Stat § 566.093 and therefore a misdemeanor in Missouri. We are convinced that no plain error occurred. *Unger*, 278 Mich App at 235.

We note additionally that defendant had five prior felony convictions and does not challenge the remaining four. MCL 769.12(1) requires that an offender may be sentenced as a fourth offense habitual offender if they have "been convicted of any combination of 3 or more felonies or attempts to commit felonies." Therefore, even if the trial court erred by counting defendant's conviction for sexual misconduct, any error did not affect defendant's substantial rights. *Carines*, 460 Mich at 763. Similarly, in light of the four remaining felonies, defendant's trial counsel was not ineffective in failing to object to the use of the sexual misconduct charge for habitual offender enhancement. Counsel is not required to raise meritless or futile objections. *People v Riley* (*After Remand*), 468 Mich 135, 140; 659 NW2d 611 (2003).

B.  OV 10

Defendant argues that the trial court erred by scoring OV 10 at 15 points for predatory conduct. We disagree. Defendant objected to this score at sentencing. We review for clear error a trial court's factual findings, and review de novo its application of those facts to the scoring conditions of a sentencing variable. See *People v Marshall*, 495 Mich 983, 983; 843 NW2d 925 (2014).

OV 10 involves the exploitation of a vulnerable victim. MCL 777.40. Fifteen points may be scored if "predatory conduct" was involved. Predatory conduct is "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(1)(a), (3)(a). Defendant simply argues generally that the record does not support the score of 15 points.[6] But the record shows that defendant and his wife placed a bed for MH in their bedroom and that defendant would wait until MH was asleep before awakening and sexually assaulting her. Defendant also lied to MH's mother about the offenses that had caused him to be placed on the sex offender registry and presented himself and his wife as providers of a stable home for MH during a rough patch in her mother's life. In sum, the record more than adequately supports the trial court's score of 15 points. *Marshall*, 495 Mich at 983.

C.  OV 11

---

[6] We note that defendant's citation to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), is misplaced; defendant was sentenced nearly a year after *Lockridge* was issued and the record makes it clear that the sentencing court was aware of the advisory nature of the sentencing guidelines. *Lockridge* did not eliminate judicial fact-finding during sentencing or obviate a sentencing court's responsibility to score the highest number of points that the record supports for all OVs, whether it uses judicially found facts or not. See *id*. at 392 n 29; see also *People v Biddles*, 316 Mich App 148, 160-161; 896 NW2d 461 (2016).

Defendant also argues that OV 11 was improperly scored at 25 points. Defendant did not challenge this score at sentencing, and our review is thus for plain error. *Unger*, 278 Mich App at 235.

OV 11 involves criminal sexual penetration; 25 points must be scored if one sexual penetration occurred during the sentencing offense. MCL 777.41(1)(a). However, the first penetration that forms the basis for a CSC I or CSC III offense must not be scored. MCL 777.41(2)(c). Therefore, to receive a score of 25 points, at least one additional penetration must have arisen out of the sentencing offense. MCL 777.41(2)(a). A penetration arises out of the sentencing offense when it "springs from or results from" the sentencing offense, "has a connective relationship, a cause and effect relationship of more than an incidental sort" with the sentencing offense.

Vaginal penetration, fellatio, and cunnilingus are considered separate sexual penetrations when scoring OV 11. *People v Johnson*, 298 Mich App 128, 132; 826 NW2d 170 (2012). Here, in her in-court testimony and her statements to the nurse examiner, MH described multiple acts of cunnilingus, fellatio, vaginal intercourse, and penetration with a vibrator. Although the record is not entirely clear regarding whether any of these penetrations occurred in the same encounter as the penetrations that formed the basis of the CSC I convictions, we conclude that it was not plain error for the trial court to infer that on at least one occasion defendant sexually penetrated MH twice, warranting a score of 25 points. *Unger*, 278 Mich App at 235.

### D. OV 14

Defendant also argues that the trial court erred by scoring 10 points for OV 14. We disagree. Defendant preserved this issue by objecting to the score at sentencing. We review the trial court's factual findings for clear error and review de novo the trial court's application of those facts to the sentencing guidelines. *Marshall*, 495 Mich at 983.

MCL 777.44 concerns multiple offenders; 10 points may be scored if defendant was a leader in a multiple offender situation. MCL 777.33(1)(a). The record reflects that while both defendant and his wife were present during the assaults, defendant primarily committed the assaults with the encouragement or support of his wife. There was also testimony that defendant had indicated that he and his wife were going to "keep" MH rather than return her to her mother. A leader is "a person or thing that leads" by "guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014) (citation omitted). We find no clear error in the trial court's determination, based on the record, that defendant was "a more dominant figure" in the offenses than his wife and that he was the "main perpetrator and clearly dominant in terms of his wife . . . and her participation in it." And this finding supports scoring 10 points for this variable. *Marshall*, 495 Mich at 983.

### E. OV 19

Defendant also argues that the trial court erred by scoring 25 points for OV 19, threat to a penal institution. We disagree. Defendant objected to this score at sentencing. We review the trial court's factual findings for clear error and review de novo the trial court's application of those facts to the sentencing guidelines. *Marshall*, 495 Mich at 983.

OV 19 is scored at 25 points if the "offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a). At sentencing, the trial court received a case report from the probation agent describing an incident in which defendant, while in custody at the jail, struck a sheriff's deputy in the face while being unshackled after he returned from a court appearance in March 2016. Defendant needed to be subdued by two officers. Defendant argues on appeal that this conduct formed the basis of a resisting arrest charge that was later dismissed, and that it therefore cannot be considered in sentencing for *this* offense. We disagree. The scoring of OV 19 explicitly contemplates post-offense conduct. See *People v Smith*, 488 Mich 193, 201; 793 NW2d 666 (2010). The underlying offense need not itself involve a court, jail, or correctional facility; the trial court therefore was not prohibited from scoring 25 points for OV 19 when sentencing defendant on his sexual abuse charges. *Id*. Here, defendant was in custody when he assaulted an officer and required two officers to subdue him. His conduct thus threatened the security of a penal institution by both increasing the risk of injury to the officers required to deal with him and leaving fewer staff members to manage the remainder of the jail inmate population. *People v Carpenter*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 335383), slip op at ___. We conclude that the trial court did not err by scoring 25 points for this variable merely because defendant was not charged with a separate offense for this assault. *Marshall*, 495 Mich at 983; see also *Carpenter*, ___ Mich App at ___; slip op at ___.

## F. PRV SCORE

Defendant argues the trial court erred by scoring his PRVs at 77 points because the record is not clear regarding whether he was represented by counsel for some of his prior convictions. We disagree. Defendant did not raise this issue before the trial court, and we review it for plain error. *Unger*, 278 Mich App at 235.

A defendant's prior convictions that were obtained in violation of a defendant's 6th amendment right to counsel, see *Gideon v Wainright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), may not be used to increase a subsequent sentence. See *People v Carpentier*, 446 Mich 19, 31; 521 NW2d 195 (1994), citing with approval *People v Moore*, 391 Mich 426, 436-438; 216 NW2d 770 (1974). A defendant seeking to challenge the validity of the use of his prior sentences bears the initial burden of proof, by either presenting evidence that he was denied representation in connection with his previous convictions, or that the sentencing court either failed to reply to a request for records or refused to provide records. *Id*. at 32-33.

Here, defendant has not satisfied that initial burden, but instead merely states that the PSIR does not contain information regarding whether defendant was represented by counsel during some of his prior convictions. This essentially places the burden on the prosecution to prove that defendant's prior convictions were not invalid. Additionally, *Carpentier* makes it clear that a defendant may satisfy this initial burden either with evidence that his convictions were obtained in violation of his right to counsel, or evidence that a sentencing court "failed to reply" to a request for records or "refused to provide" such records. *Id*. at 34-35. Defendant does not present any evidence in support of his assertion and therefore has not met his initial burden of proof. Similarly, because defendant has not presented any evidence that his prior convictions were obtained in violation of his right to counsel, or that he requested his conviction records and the sentencing courts failed to reply or refused to provide them, defendant has failed

to establish the factual predicate for his related claim of ineffective assistance of counsel. See *Hoag*, 460 Mich at 1, 6.

## IV. STANDARD 4 BRIEF

In his Standard 4 brief,[7] defendant raised six issues in addition to the ten issues raised in his main appellate brief. We have reviewed all of these additional issues with reference to the lower court record, and have concluded, for the reasons contained in the prosecution's supplemental brief, that none of them have merit.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[7] A pro per supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.