# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* FARIMANG SANNO, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

FARIMANG SANNO,

        Respondent-Appellant.

UNPUBLISHED
October 16, 2018

No. 340351
Wayne Circuit Court
Family Division
LC No. 16-523936-DL

---

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

The trial court adjudicated respondent guilty of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and removed him from his home for placement in a non-secured facility. Respondent appeals as of right. We affirm.

Respondent's adjudication arises from his sexual assault of a four-year-old child in his family home in Detroit sometime between September and December 17, 2016. At the time, respondent was 16 years old, and lived in the house with his uncle, who was married to the victim's paternal aunt; the victim's paternal grandmother also lived in the home. Beginning in the fall of 2016, the victim's parents arranged with the victim's aunt and grandmother to drop the victim at their house in the early morning, so that she could be transported to and from preschool by either her aunt or grandmother, and then one of her parents would pick her up in the evening. The victim testified that, on more than one occasion, respondent picked her up, placed her on his lap, unbuttoned her pants, and digitally penetrated her vagina. On December 17, after the victim's mother was informed that respondent had been accused of sexually molesting his young cousin, who also lived in the home, she asked the victim if anyone had touched her private area.[1] The victim disclosed respondent's conduct to her mother, which led to a police investigation and respondent's arrest. Respondent denied any wrongdoing, and the defense asserted that the victim

---

[1] In a separate case, respondent was adjudicated not guilty regarding the allegations involving the other child.

was not credible, her statements were inconsistent, and she had been coached by her parents, who did not like respondent.

## I. RIGHT OF CONFRONTATION

Respondent first argues that the trial court improperly limited his cross-examination of the victim regarding inconsistent statements that she made during a forensic interview, thereby violating his right of confrontation. We disagree.

Respondent sought to use the videotaped forensic interview of the victim when cross-examining the interviewing officer, which the trial court precluded. We review this preserved evidentiary issue to determine whether the trial court abused its discretion by excluding the interview, thereby limiting the scope of respondent's cross-examination in that regard. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). However, respondent did not attempt to question the victim about her statements to the officer, or raise the argument that precluding this line of questioning or excluding the videotaped interview would violate his constitutional right of confrontation, leaving those arguments unpreserved. We therefore review respondent's unpreserved constitutional and evidentiary claims for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Preliminarily, respondent asserts that "[t]he trial court's failure to allow Respondent to cross-examine *Complainant*, at least with regard to inconsistent statement [sic] that she made to the police respecting [sic] Respondent's alleged digital penetration, denied Respondent his Sixth Amendment right of confrontation by limiting cross-examination." (Emphasis added.) Respondent's citations to the record in support of this claim all concern defense counsel's cross-examination of the interviewing officer, not respondent. The victim testified on the first day of trial. Defense counsel did not attempt to impeach her with any statements that she made to the interviewing officer. Respondent attempted to introduce the victim's interview statements during defense counsel's cross-examination of the officer, who testified on the second day of trial. During defense counsel's cross-examination of the officer, the following exchange occurred:

> *Q*. Do you remember me asking her questions and I asked her who was home that day and what were you doing, and she said she was playing with [SK]. I forget exactly what she said was she was playing in the living room. Do you remember that?
>
> *A*. Okay. I vaguely remember her saying that. I don't know what the question—her answer was to what question. I don't remember exactly that, but I do remember her saying she was playing with [SK] at some point, but if it was to that question, I couldn't say for sure.
>
> *Q*. Now, you remember *from your interview*, if you looked at it, *when you asked her that question, she said she was home alone; is that correct*?
>
> *The prosecutor*: Your Honor, at this point I'm going to have to object. The statements made by the child in the interview, the videotape are hearsay and

-2-

that's why we can't admit the video tape itself, which would certainly be a better record than Counsel's interpretation of the video. It's hearsay and that's why it's not allowed, and it's an out-of-court statement. The child testified. These questions were asked of the child. I would just object to any statements made by the child during the interview. That's why I didn't ask about those in Direct Examination of Officer /Herndon.

*Defense counsel*: Well, Judge, it was—I mean, it's going to be part of my argument, also in regards to [the victim]. It's practically difficult to cross examine [the victim] with differences in her testimony during trial and just in what she said. That would be normal cross-examination.

*The court*: The objection is sustained.

* * *

*Q*. *From watching the video this morning again*, do you remember you asking her where—well, do you remember her describing the incident to you. She said she was—

*The prosecutor*: Objection, your Honor. Same objection.

*Defense counsel*: Okay. I'm sorry. I'll rephrase it.

*Q*. Did she give you different versions of how it happened? Do you remember that?

*A*. I wouldn't say different versions, no. [Emphasis added.]

Respondent now argues that under MRE 613(b), he should have been allowed to use the victim's inconsistent statements from the interview for impeachment purposes. MRE 613(b) provides that extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is allowed to explain or deny the statement and an adverse party is given an opportunity to examine the witness. To satisfy MRE 613(b), "the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness." *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007).

MRE 613(b) declares that a witness can be impeached by his or her own statement. As previously mentioned, respondent states that defense counsel was not allowed to cross-examine the victim regarding the victim's inconsistent statements that she made to the interviewing officer. At trial, however, respondent did not confront the victim with any statement that she made to the officer. As a result, the victim was not afforded the opportunity to explain any inconsistency. Thus, respondent did not properly establish a foundation for use of a prior statement under MRE 613(b). Accordingly, respondent is not entitled to relief with respect to this unpreserved claim.

Respondent also argues that the trial court erred by excluding the videorecorded forensic interview conducted by the officer, which respondent claims should have been allowed for impeachment purposes. However, the admissibility of a child's recorded forensic interview is governed by MCL 712A.17b, which applies to the juvenile proceedings in this case. MCL 712A.17b(1) and (2)(a); MCL 712A.2(a)(1)(A). In specific, if the offense alleged against the juvenile is CSC-I, as in this case, a witness's "videorecorded statement shall be admitted at all proceedings *except the adjudication stage* instead of the live testimony of the witness." MCL 712A.17b(5). Because the instant trial was the adjudication phase (where the victim actually testified), the videotaped interview was not admissible. Therefore, the trial court's decision to preclude inadmissible evidence was not an abuse of discretion, and the decision did not deprive respondent of his right of confrontation.

Respondent suggests that he should have been allowed to circumvent the rules because of his opinion that the four-year-old victim "lacked a sufficient sense of obligation to testify truthfully and understandably[.]" But neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject, *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), and respondent has not explained why the rules should not be applied because this case involves a four-year-old accuser. In addition, the trial court did not preclude respondent from otherwise challenging the victim's credibility. As plaintiff aptly observes, during cross-examination, defense counsel elicited answers from the victim to demonstrate that she became confused and was inconsistent about the details surrounding the alleged assault, which was what respondent apparently sought to accomplish by questioning the officer about whether the victim said she was playing with her young cousin or was alone. Through the questioning of the victim, defense counsel also elicited other inconsistent testimony. For example, the victim testified that she told her mother about the assault as soon as she saw her, but then stated that she told her mother when they arrived home. She testified that she did not tell her father, but later testified that she did tell her father. She could not remember who was at home at the time of the assault or if she had gone to school the day that the assault occurred. She stated that she was watching television, but later testified that the television was not on. The trial court heard this inconsistent testimony and still found the victim's testimony that respondent had "digged in [her] privacy" credible.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, respondent argues that he is entitled to a new trial because defense counsel was ineffective. We disagree

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* at 188. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, because defendant failed to raise this issue in an appropriate motion in the trial court, or more for a hearing pursuant to *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973), no factual record has been created on which this Court may evaluate defendant's claim of ineffective assistance of counsel.

Accordingly, our review is limited to errors apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694–696. The defendant has the burden of establishing the factual predicate of his ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

## A. FAILURE TO OBJECT TO LEADING QUESTIONS

Respondent argues that defense counsel was ineffective for failing to object to the prosecutor's use of leading questions during her direct examination of the victim. MRE 611(d)(1) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Regarding the development of testimony, "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). To warrant reversal based on a prosecutor's use of leading questions, the defendant must show "some prejudice or pattern of eliciting inadmissible testimony." *Id*. (citation omitted). Reversal is not required if the defendant was not prejudiced by the leading questions. *Id*.

While some of the questions that respondent highlights were leading, none require reversal of respondent's adjudication. The victim was only four years old at the time of trial and had to testify about being sexually assaulted by respondent. She was able to describe the act of sexual conduct, i.e., that respondent "digged in [her] privacy," without the use of leading questions. It is clear from the record that the prosecutor resorted to using leading questions, preliminarily, to guide the victim to state what happened when respondent came in the room, and to clarify, after she testified that respondent unbuttoned her pants and "his hand was in [her] privacy," that his hand was actually "underneath her pants." Another question was used to develop the victim's testimony that when she indicated that this had happened before, she meant "[t]he same thing with his hand." In the remaining questions, most of which were not leading, the prosecutor asked the victim if she told respondent to stop, and asked questions that led the victim to state if, when, and who she told.

Given the victim's age and the nature of the subject matter to which she was testifying, defense counsel could have reasonably concluded that "[a]ny leading of the witness was only to the extent necessary to develop her testimony," *Watson*, 245 Mich App at 587, and, thus, any objection would have been futile. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, apart from listing citations to leading questions and

making general comments, respondent has failed to show that any inadmissible testimony was elicited through the use of those leading questions. Consequently, respondent has failed to show that that there is a reasonable probability that the outcome would have changed had counsel objected. *Nix*, 301 Mich App at 207.

## B. FAILURE TO EFFECTIVELY CROSS-EXAMINE THE VICTIM

Respondent also argues that defense counsel was ineffective for failing to "pursue a more assertive cross-examination of the child." Decisions about defense strategy, including how to question a witness, are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defense counsel has wide discretion regarding matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

The record does not show that defense counsel's cross-examination strategy was objectively unreasonable or prejudicial. Based on the record, as opposed to directly accusing the victim of lying and aggressively questioning her "until the child became so confused or broke down[,]" defense counsel chose to steadily question the victim in an attempt to elicit inconsistencies, which counsel was able to do successfully. Furthermore, the primary defense theory was that the victim's accusations against respondent were attributable to her parents' suggestion, which she adopted, rather than her simply falsely accusing respondent, i.e., her being a liar. Defense counsel asked the victim questions to support this theory, and was successful in eliciting testimony from the victim that her mother told her that respondent did something to her and that if her parents tell her something, that means it is true. As defense counsel explained in her closing argument, her defense strategy was not to call the victim a liar, but to show that "she does not have sufficient physical or mental capacity or a sense of obligation to testify truthfully or understandably . . . And that she could say these things because they were suggested to her by her parents[.]" Given these circumstances, counsel's reasons for proceeding as she did are both apparent and objectively reasonable. *Nix*, 301 Mich App at 307. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Moreover, respondent has not provided any factual predicate for inferring that a more aggressive cross-examination would have elicited a favorable outcome. Thus, we are not persuaded that respondent was denied the effective assistance of counsel in this regard.

## C. FAILURE TO CALL A DEFENSE EXPERT

In his last ineffective-assistance claim, respondent argues that defense counsel should have consulted and called "an expert on child sexual abuse and suggestibility in very young children." "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defense counsel's failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *Id*. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

Respondent has not made an appropriate offer of proof regarding the substance of any testimony an expert on child sexual abuse and suggestibility in young children could have offered. There is no evidence that an expert would have supported the defense theory that the victim adopted a story suggested to her by her parents. Respondent's mere speculation, based on some psychology articles, that an expert could have provided favorable testimony is insufficient to show that defense counsel's failure to call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. *Payne*, 285 Mich App at 190. Respondent has not overcome the strong presumption that defense counsel provided constitutionally effective assistance.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens