*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 13, 2025
12:09 PM

Plaintiff-Appellee,

v

No. 362866
Cass Circuit Court
LC No. 2021-010175-FH

DOUGLAS CLARK GOINS,

Defendant-Appellant.

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

On June 12, 2021, in violation of the terms of a personal protection order (PPO), defendant, Douglas Clark Goins, surreptitiously entered his ex-wife's house and assaulted his ex-wife and her boyfriend. For his actions, defendant was convicted by a jury of first-degree home invasion, MCL 750.110a(2); two counts of assault with a dangerous weapon (felonious assault), MCL 750.82; and domestic violence, MCL 750.81(2). The trial court then sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 25 to 50 years in prison for the conviction of first-degree home invasion, 58 months to 15 years in prison for each felonious-assault conviction, and 93 days for the domestic-violence conviction. On appeal, defendant contends that the trial court abused its discretion by admitting evidence of prior acts of domestic violence without applying the balancing test prescribed by MRE 403, that his trial attorney was ineffective for several reasons, and that he must be resentenced because he appeared from a remote location for sentencing. We affirm.

## I. FACTUAL BACKGROUND

Defendant and his ex-wife, TG, were married for nearly 18 years, and they had two children during their marriage. The couple's divorce was finalized on October 20, 2020, and TG was given the family's house on Crooked Creek in Cassopolis through the judgment of divorce, but defendant did not move out of the house. On February 1, 2021, TG obtained a PPO against defendant. Later that month, defendant moved out of the house on Crooked Creek.

On June 12, 2021, TG and her boyfriend were asleep in her bed when defendant kicked in the bedroom door. Defendant said to TG's boyfriend: "I told you not to be in my house anymore." Defendant hit TG's boyfriend, and the two men wound up in a struggle. Then, defendant left the

-1-

bedroom, and TG and her boyfriend attempted to barricade the bedroom door. TG called 911 after defendant left, and she had her back against the bedroom door. Defendant returned and pounded on the bedroom door with an object that TG later discovered was a cinder block. Defendant threw the cinder block through the door, which completely "shredded the door." TG's boyfriend had his hands on the door. The cinder block grazed his arm and the back of his left ear, and his hand was cut from damage done to the bedroom door. TG did not suffer any injuries. After that, defendant left and police officers arrived to investigate the disturbance.

Based on the confrontation, defendant was charged with home invasion, stalking, felonious assault, malicious use of telecommunications services, domestic violence, and assault and battery. Defendant turned down a plea offer and proceeded to trial. At a two-day jury trial in May 2022, a jury found defendant guilty of first-degree home invasion, third-degree home invasion, two counts of felonious assault, domestic violence, and assault and battery. The jury acquitted defendant on charges of aggravated stalking, stalking, and malicious use of telecommunications services. Later, defendant's convictions of the lesser included offenses of third-degree home invasion and assault and battery were vacated. At a sentencing hearing on July 8, 2022, in which defendant participated from a remote location, the trial court sentenced defendant as a fourth-offense habitual offender to serve 25 to 50 years in prison for the conviction of first-degree home invasion and lesser concurrent terms of incarceration for the other three counts of conviction. Defendant then appealed of right.

While this appeal was pending, this Court issued an order on July 24, 2024, remanding the case for a hearing in the trial court.[1] As a result, on September 23, 2024, the trial court conducted a hearing on defendant's request for a new trial, reinstatement of a plea offer, and development of the record on ineffective assistance of counsel under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). After holding an evidentiary hearing at which defendant and his trial counsel testified, the trial court denied defendant's requests for a new trial and to reinstate the plea offer.

## II. LEGAL ANALYSIS

On appeal, defendant challenges the trial court's admission of evidence that he committed acts of domestic violence in addition to those supporting the criminal charges against him, that his counsel provided ineffective assistance before and during trial, and that his remote participation in his sentencing hearing violated constitutional norms. We shall address all these issues in turn.

### A. OTHER-ACTS EVIDENCE

Long before defendant's trial, the prosecution filed written notices that it planned to present evidence of defendant's past acts of domestic violence under MCL 768.27b. Each notice referred to the date of the incident and included a police report describing the alleged prior act of domestic violence. During its direct examination of TG, the prosecutor began the presentation of other-acts evidence by advising TG that "I want to take you back to an incident on July 9, 2020." That drew an objection from defense counsel, so the trial court excused the jury and took up the issue on the

---

[1] *People v Goins*, unpublished order of the Court of Appeals, entered July 24, 2024 (Docket No. 362866).

record. After hearing arguments from both sides, the trial court decided to "permit the questioning under the notice that was provided under [MCL] 768.27b." Defendant contends that the trial court erred in that ruling by failing to employ the balancing test prescribed by MRE 403.[2]

This Court reviews "a trial court's evidentiary decisions for an abuse of discretion." *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. at 599. A ruling "on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

The admissibility of other-acts evidence usually turns on MRE 404(b), which prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. But MCL 768.27b(1) states a rule that ordinarily mandates the admission of other-acts evidence, requiring that "in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." As this Court has noted, "MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011). Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." To be sure, all "evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Only "when the probative value is substantially outweighed by the danger of unfair prejudice" is evidence subject to exclusion under MRE 403. *Id*. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Applying MCL 768.27b, this Court has explained that "prior-bad-acts evidence of domestic violence" is admissible at a criminal trial "because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.'" *Cameron*, 291 Mich App at 610 (ellipsis and alteration in original). Here, the prosecution charged defendant with domestic violence, and TG testified about a previous incident of domestic violence involving defendant at her home. TG's explanation of the incident established that defendant was angry with their son for disregarding advice not to haul items in the son's new truck. After their son hung up

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

on defendant, defendant came to TG's home, argued with their son, and punched him, causing him to bleed. TG, their son, and TG's nephew ran into the house and shut the door. Defendant kicked down the door to confront their son. While TG stood between defendant and their son, defendant punched TG in the head and in other places. Thus, evidence concerning defendant's previous act of domestic violence showed that defendant had a propensity to physically attack family members out of anger by punching them and kicking down doors. See *id*.

Despite the manifest significance of the other-acts evidence, defendant faults the trial court for failing to properly weigh the probative value of the evidence against its prejudicial effect. To decide whether such relevant evidence should be excluded because of its prejudicial effect, a trial court should consider the following factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).[3]]

Here, in the prior domestic-violence incident, defendant went to TG's home to confront their son, which led to an altercation in which defendant broke into TG's house and struck TG and their son. Similarly, the charges that defendant faced at trial involved defendant breaking into TG's bedroom to confront and assault TG's boyfriend. Although differences existed between the two events, they were strikingly similar in all material respects. Both incidents involved defendant becoming angry and then breaking down a door to engage in a physical altercation that involved punching the others who were the subjects of his wrath.

The previous attack occurred just 11 months before the incident that resulted in the charges in this case, and the evidence at trial showed that issues persisted between defendant and TG. Their divorce was finalized in October 2020. TG was awarded the house, but defendant refused to move out. TG obtained a PPO on February 1, 2021, because defendant was continuously destroying the house and he threatened to have TG fired from her job. TG stated that she enforced the PPO later in February 2021 after defendant and their younger son had an altercation, but defendant continued to come to TG's house. The charges contested at trial resulted from defendant breaking into TG's bedroom on June 12, 2021, after seeing her boyfriend's car in the driveway, and TG furnished the only testimony about the prior incident of domestic violence. In sum, the trial court's decision to admit the other-acts evidence was entirely appropriate because that evidence was highly probative, it focused on an incident close in time to the event leading to the charges in the case, it was offered through the testimony of one witness, TG, and it was manifestly reliable.

---

[3] In *Watkins*, 491 Mich at 487-488, our Supreme Court tested the admissibility of evidence under MCL 768.27a, which concerns offenses against minors. We consider the same factors applicable in cases addressing the admissibility of evidence under MCL 768.27b.

Defendant insists the trial court failed to employ the MRE 403 balancing test before finding the other-acts evidence was admissible. In objecting, defense counsel conceded that MCL 768.27b supports broad admission of evidence, "but there are still limits to it and one of those limits is that the risk of improper prejudice overweighs the relevance." The prosecutor responded by observing that, when TG tried to separate defendant and their son, "she was hit in the face multiple times by" defendant, "[s]o it is related, certainly, as far as the domestic violence committed against" TG. In overruling the objection of defense counsel, the trial court noted that MCL 768.27b is an inclusive statute. The court concluded that, considering the language of the statute and the current caselaw, the other-acts evidence should be admitted. To be sure, the trial court did not apply the MRE 403 balancing test in a formal manner, but the record establishes that the trial court considered and then rejected defense counsel's argument regarding the prejudicial nature of the evidence. Because the probative value of the other-acts evidence was not outweighed by the risk of unfair prejudice, the trial court did not abuse its discretion by admitting the other-acts evidence under MCL 768.27b.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant seeks relief based on ineffective assistance of counsel, identifying three issues. In order to obtain a new trial based on ineffective assistance of counsel, a defendant must establish that (1) defense "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To prevail on that claim, a defendant "must overcome a strong presumption that the assistance of his counsel was sound trial strategy[.]" *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). This Court cannot "substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Under all these standards, we shall consider defendant's three claims of ineffective assistance of counsel.

## 1. FAILING TO OBJECT TO ADMISSION OF UNREDACTED PPO

Defendant contends that his trial attorney was ineffective for failing to stipulate that a PPO barred defendant from assaulting TG and failing to object to the admission of an unredacted copy of the PPO as a trial exhibit. Defendant was charged with aggravated stalking in violation of MCL 750.411i. TG obtained a PPO in February 2021 against defendant. In issuing the PPO, the court found that defendant "poses a credible threat to the physical safety of [TG] and/or a child of" TG. The PPO prohibited defendant from following TG or appearing within her sight, approaching or confronting TG, entering onto TG's property, or appearing at her workplace or her residence. The PPO was signed by the same judge who presided over defendant's criminal trial.

Defendant insists that the admission of the PPO as a trial exhibit caused unfair prejudice to his defense because it showed that the presiding judge had found that defendant posed a danger to TG. Consequently, defendant claims that his trial attorney was ineffective for failing to stipulate to the existence of the PPO. Neither side has cited published or unpublished decisions on the issue, and there appears to be no decision holding that a defense attorney can be ineffective for failing to

stipulate to the existence of a PPO in a case in which the defendant was charged with stalking.[4] It is unclear whether the prosecutor would have agreed to a stipulation as to the existence of the PPO in this case. At the *Ginther* hearing, defense counsel asserted that that would not be the case. It is also unclear whether the trial court would have accepted a stipulation to the existence of the PPO without admission of the PPO. To prove the offense of aggravated stalking, the prosecutor must establish a violation of the PPO. MCL 750.411i(2)(a). Accordingly, the prosecutor must not only prove that a PPO exists, but also demonstrate that defendant violated one of the restrictions in the PPO, and not all PPOs impose the same restrictions.

In any event, defense counsel testified that the PPO itself was part of the defense's strategy. The defense theorized that TG was someone who was sophisticated and who manipulated the court system. Specifically, TG would obtain court orders without defendant's knowledge and then allow defendant to stay in the house even though it was in violation of the orders. TG enforced the orders to get defendant out of the house when she wanted to pursue her relationship with her boyfriend. According to the defense, she did not enforce the orders because she was afraid of defendant.

That strategy was not unreasonable under the circumstances of the case. TG was awarded the house in the divorce judgment entered in October 2020. She obtained a PPO against defendant in February 2021. But defendant continued to live in the house with TG, who did not exercise her rights under the PPO until later in February 2021. TG started her relationship with her boyfriend in February 2021. Even after defendant moved out of the house, he returned to mow the lawn and he left his personal belongings in the house. TG never called the police or demanded that defendant leave when he returned to mow the lawn. Because that defense theory constituted a viable response to the charges at trial, defense counsel's performance was not deficient in that regard.

To the extent that defendant claims that the admission of the PPO violated the presumption of innocence and judicial impartiality, those assertions are without merit. The trial court expressed no opinion about the PPO to the jurors during trial, neither party emphasized the fact that the PPO was signed by the presiding judge at trial, and nothing in the record suggests that the jurors were influenced by the fact that the trial judge was the judicial officer who had signed the PPO. Hence, we have no reason to conclude that the admission of the PPO either compromised the presumption of innocence or suggested judicial partiality.

### 2. FAILING TO OBJECT TO PROSECUTOR'S ARGUMENTS

Defendant argues that defense counsel was ineffective for failing to object and then request a curative instruction from the trial court when the prosecutor suggested knowledge of facts not in evidence and vouched for the credibility of a witness. We generally review claims of prosecutorial misconduct de novo. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). We review "claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Watson*, 245 Mich App 572,

---

[4] Defendant relies on *Old Chief v United States*, 519 US 172, 174; 117 S Ct 644; 136 L Ed 2d 298 (1997), which held that, in a trial involving a charge of possession of a firearm by a convicted felon, the district court abused its discretion by denying the defendant's request to stipulate to the existence of a prior felony conviction. That decision is both distinguishable and inapplicable.

-6-

586; 629 NW2d 411 (2001). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 201, 235; 749 NW2d 272 (2008). Ordinarily, a prosecutor is "free to argue the evidence and all reasonable inferences from the evidence as it related to" a "theory of the case." *Id*. at 236.

At trial, defense counsel made the following comments in closing arguments:

Because [TG] uses the Court to get what she wants, and I would argue that this talk of being terrified and horrified and tearing the house up with an ax is disingenuous because [TG] also said in her testimony up until June 12th, he was a sweetest guy in the world; she said that, he was the sweetest guy in the world up until that night, in contradiction to her then later statement when asked, well why are you nailing a door shut. Oh, he broke up the house with an ax; well, that's sweet, you know?

In rebuttal, the prosecutor argued the following in response:

So what does [TG] want? She's married to this man for 18 years, they have 2 kids together, and the bottom line is she's in an abusive relationship. If you think about the testimony and the incidents that were covered. There's this incident in July, she gets the divorce in October; she wants him out of the house, but he's not leaving, and keep in mind that this is all happening during the pandemic and nobody is getting evicted. But if you put yourself in her shoes and you think about dealing with somebody who's capable of doing these things; what do you think it's like for her trying to tell him to get out of the house? She's trying to do this amicably, she's trying to do this the best way that she can, but she's not forcing this guy to do anything. And that's what personal protection orders are for, that's why judges give personal protection orders; if someone is in danger, they're going to grant this personal protection order to prevent this exact situation.

Defendant's claim of ineffective assistance of counsel for failure to object rests on the view that the prosecutor's rebuttal argument was improper. In our view, however, the prosecutor simply argued reasonable inferences from the evidence presented at trial. TG testified that she obtained the PPO because defendant continuously destroyed the house and because he attempted to get her fired from her job. She also testified about an incident in which defendant kicked in the door and punched her when she attempted to stop the physical altercation between defendant and their son. She explained that she asked defendant to leave the house many times, but he refused. She stated that she was trying to handle the divorce as amicably as possible. She testified that defendant was not a nice person and she was afraid that he would become violent. The prosecutor did not suggest that he had any special knowledge about the issuance of the PPO, nor did he improperly vouch for TG's credibility. The prosecutor's rebuttal was a reasonable response to defense counsel's closing argument considering TG's trial testimony.

Defense counsel testified at the *Ginther* hearing that he avoided objecting during opening statements and closing arguments unless something "most egregious" was said because he did not want to draw the jury's attention to the improper remark or have the jury question why he did not

want them to think about it.  Defense counsel's failure to object "for strategic reasons . . . does not amount to ineffective assistance of counsel." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).  Moreover, the trial court read to the jury the following instruction:

> The lawyers' statements, arguments and any commentary are not evidence.  They are only meant to help you understand the evidence and each side's legal theories.  You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.  The lawyers' questions to the witnesses and my questions to the witnesses also are not evidence.  You should consider these questions only as they give meaning to the witnesses' answers.

Because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors[,]" *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), the instruction given the jury presumptively cured any error that occurred.  Thus, defendant cannot show prejudice flowing from his counsel's failure to object during the prosecutor's rebuttal argument.

### 3.  FAILING TO ADEQUATELY ADVISE DURING PLEA NEGOTIATIONS

Moving away from concerns about the trial, defendant insists he is entitled to reinstatement of a plea offer that he declined because of ineffective assistance of counsel.  A defendant is entitled to the effective assistance of counsel in the plea-bargaining process.  *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).  A defendant seeking relief for ineffective assistance during plea-bargaining must show "(1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 592  "[D]efendant must show the outcome of the plea process would have been different with competent advice." *Id*. (quotation marks omitted).  In a case in which the alleged prejudice is that the defendant rejected a plea offer,

> [the] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*. (quotation marks and citation omitted).]

Defendant was charged, as a fourth-offense habitual offender, with eight crimes, including offenses of first-degree home invasion, aggravated stalking, felonious assault, stalking, malicious use of telecommunication services, domestic violence, and assault and battery.  Before defendant's trial, the prosecution offered defendant a plea deal in which he would plead guilty to second-degree home invasion as a second-offense habitual offender in exchange for the dismissal of the remaining charges.  At a pretrial conference on November 29, 2021, that defendant attended, his attorney told the trial court of that plea offer and stated: "I related that offer to [defendant]; he has declined that offer so we do not have a resolution at this moment."

There is no dispute that if defendant had accepted the offer to plead guilty to second-degree home invasion as a second-offense habitual offender, he would have faced significantly less prison

time than he received after his trial and conviction by jury verdict for first-degree home invasion as a fourth-offense habitual offender. The sentencing guidelines under the plea agreement would have been 58 to 142 months.[5] See MCL 777.64. In contrast, defendant's guidelines for the offense of first-degree home invasion after his trial were 99 to 320 months. MCL 777.63. But defendant cannot succeed on his claim of ineffective assistance of counsel in plea negotiations unless he can show that he would have accepted the offer if he had received competent advice. Defendant argues that, if defense counsel had told him that the sentencing guidelines under the plea offer were 58 to 142 months, he would have accepted it. But defendant testified at the *Ginther* hearing, where his testimony about plea negotiations was inconsistent and confusing. He initially stated that defense counsel *never* informed him what the guidelines would be under the plea agreement. But he then testified that defense counsel only told him that the maximum exposure under the plea agreement would have been five years less than if he were convicted at trial. Further, he later testified that, when they discussed the plea agreement while defendant was incarcerated, defense counsel told him that the guidelines under the plea would have been 88 or 98 months to 260 to 300 months.

Defense counsel testified that he did not specifically recall discussing the guidelines with defendant. But he explained that he had a process that he went through with each client. He would score the highest possible guidelines and compare them with the prosecutor's guidelines scoring. He would provide a copy of the guidelines scoring to his client. In this case, defense counsel stated that he knew there was a "significant difference" in the guidelines under the plea than if defendant were convicted at trial. On cross-examination, defense counsel denied ever telling defendant that the guidelines would start at 88 or 98 months for second-degree home invasion. He explained that there could never be just an 11-month difference between the guidelines for a conviction of first-degree home invasion at trial and the plea to second-degree home invasion. Further, he commented that, until approximately one week before trial, defendant was adamant about not accepting *any* plea agreement. Defense counsel "thought it was reckless and ill-advised." Defense counsel stated that he told defendant that defendant would face significant prison time if convicted at trial. There was no reason the trial court would impose a sentence at the bottom of the sentencing guidelines range considering the allegations, and being treated as a fourth-offense habitual offender exposed defendant to massive penalties. Thus, defense counsel told defendant to consider a plea to reduce his exposure to those penalties. Ultimately, defense counsel sent an e-mail to the prosecutor eight days before defendant's trial advising the prosecutor that defendant had authorized a request for a four-year sentencing agreement in exchange for accepting the plea agreement. The prosecutor did not respond, and defense counsel believed that the failure to respond was a rejection.

Considering the testimony presented at the *Ginther* hearing, defendant has not established that he would have accepted the plea offer if his attorney had informed him of the proper guidelines range under the plea offer. First, it is unclear whether defense counsel provided defendant with inaccurate information. Defendant did not offer clear testimony in that regard, and defense counsel denied that he would have ever told defendant that the guidelines under the plea would have started at 88 or 98 months. Because "[t]he defendant has the burden of establishing the factual predicate

---

[5] Defendant's prior record variable score of 150 points would have placed him at Level F and his offense variable score of 56 points would have placed him at Level V.

of his ineffective assistance claim[,]" *Douglas*, 496 Mich at 592, but defendant has failed to make such a showing in this case, his claim of ineffective assistance of counsel necessarily fails.

Significantly, although defendant apparently would have accepted an offer with an agreed sentence of four years, the prosecutor declined that counteroffer. Under the prosecutor's offer, the bottom of the guidelines range would have been 58 months, i.e., 4 years and 10 months. But there was no guarantee that the trial court would have imposed a sentence at the bottom of the guidelines range, especially considering defendant's extensive criminal history. Defendant would have faced a sentence of 11 years and 10 months at the upper end of the guidelines range. Hence, defendant's claim that he would have accepted the plea offer if he had been informed of the proper guidelines range is contradicted by his insistence on an agreed four-year minimum prison term. See *id*.

Beyond that, defendant maintained his innocence throughout the trial proceedings, and he continues to do so on this appeal. "[A] trial court may not accept a guilty plea without placing the defendant under oath and establishing a factual basis for the defendant's guilt." *People v White*, 331 Mich App 144, 152; 951 NW2d 106 (2020). See also MCR 6.302(D). At the *Ginther* hearing, defendant admitted that he was in TG's house, but he maintained his innocence because he did not believe he violated any criminal law. Defense counsel's testimony at the *Ginther* hearing indicated that, despite his advice, defendant was adamant that he would not accept a plea offer that did not include a four-year sentencing agreement. The trial court found defense counsel's testimony more credible than defendant's testimony, see *White*, 331 Mich App at 154, so defendant has not met his burden of demonstrating that he would have accepted the plea offer if not for defense counsel's purportedly inaccurate advice. See *id*. Thus, he is not entitled to have the plea offer reinstated.

### C. REMOTE PARTICIPATION IN SENTENCING HEARING

Defendant's final challenge concerns the mechanics of his sentencing hearing. On July 8, 2022, the trial court conducted defendant's sentencing hearing. The record indicates that defendant was not physically present in the courtroom. Instead, defendant actively participated from a remote location through an electronic connection. "To preserve claims of error, a party must object before the lower court." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Defendant did not challenge his remote participation in his sentencing hearing, so he failed to preserve a claim about his remote attendance for appellate review. This Court reviews a "defendant's unpreserved constitutional claim for plain error affecting his substantial rights." *Id*. "Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *Id*. at 279-280 (quotation marks and citation omitted).

"[A] criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected, including during sentencing." *Id*. at 281. A defendant's virtual appearance at a sentencing hearing is not a suitable substitute for an appearance in person. *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016). There may be benefits to the use of video technology, but "in the felony sentencing context, it is simply inconsistent with the intensely personal nature of the process." *Id*. at 319.

When defendant was sentenced in July 2022, MCR 6.006(A) stated:

Defendant in the Courtroom or at a Separate Location. District and circuit courts may use two-way interactive video technology to conduct the following proceedings between a courtroom and a prison, jail, or other location: initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, *sentencings for misdemeanor offenses*, show cause hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, waivers and adjournments of preliminary examinations, and hearings on postjudgment motions to amend restitution. [Emphasis added.]

Defendant was convicted of crimes such as first-degree home invasion, MCL 750.110a(2), which is a felony. See MCL 777.16f. The parties seem to agree that defendant was entitled to be present in person at his sentencing hearing, but they disagree about the remedy for the error that occurred when defendant was sentenced from a remote location.

Many cases concerning a defendant's physical presence at sentencing involved hearings that were held remotely as a result of restrictions enacted in response to the COVID-19 pandemic. See, e.g., *Anderson*, 341 Mich App at 283. In this case, however, defendant was sentenced in July 2022 after many of the pandemic-era restrictions had been lifted. There was no discussion on the record about defendant's remote participation in the sentencing hearing and, as a result, it is unclear why defendant was not physically present at the sentencing hearing. Even though we cannot solve that mystery, we conclude that defendant has established plain error because the trial court failed to obtain a waiver of the right to an in-person sentencing hearing. See *id*. But defendant must also show "that the error affected his substantial rights—i.e., he must establish a reasonable probability that, but for the error, the outcome of the proceedings would have been different." *Id*. (quotation marks and citation omitted). Put another way, "defendant must successfully establish that, had he been physically present in the courtroom, there is a reasonable probability that his sentence would have been different." *Id*. Consequently, we have to "determine whether the plain error affected defendant's sentencing and, if it did so, whether it also seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 284.

Defendant has not shown that his remote participation in his sentencing hearing affected his substantial rights. Defense counsel was physically present in the courtroom during sentencing. The trial court asked defendant whether he had additions or corrections to make to the presentence investigation report. Defendant said no. When jail staff informed the trial court that it was difficult to hear the prosecutor speak, the trial court summarized the prosecutor's statements and ensured that defendant heard the summary. Defense counsel offered comments on defendant's behalf, and then defendant made a statement on his own behalf before the trial court imposed sentence.

Defendant's sentencing guidelines were set at 99 to 320 months. An agent of the Michigan Department of Corrections recommended a minimum sentence of 10 years, i.e., 120 months. The prosecutor believed that the recommendation was "generous," but did not object. Defense counsel requested a minimum sentence at the bottom of the guidelines range or a departure under the range. The trial court sentenced defendant to a minimum prison term of 25 years, i.e., 300 months, which was near the higher end of the guidelines range. The trial court explained it considered defendant's lengthy criminal history, including assaultive crimes, repeated breaking and entering, and stalking.

In addition, the trial court opined that defendant was unable to follow state or federal court orders because defendant violated the PPO and the rules of his federal supervision. The trial court stated that society deserved a break from defendant because he did not intend to stop committing crimes.

Based on our review of the transcript of the sentencing hearing, we conclude that defendant has not demonstrated any defects or irregularities in his sentencing hearing other than his remote participation without a waiver. Defendant and his counsel were active participants in the hearing. There is no indication that the trial court could not hear defendant, and the trial court immediately summarized the prosecutor's statements that defendant was initially unable to hear. The trial court explained the reasons for its sentence before it imposed a prison term within the guidelines range. Therefore, defendant has failed to establish that his sentence would have been different if he had been sentenced in person. See *Anderson*, 341 Mich App at 282. Because defendant has failed to establish that his remote participation in the sentencing hearing affected his substantial rights, he is not entitled to resentencing. See *id*. at 287-288.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates